UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SOLOMON LEAKE and                            07 Civ. 2947 (CM)
HAYDEN MAE LEAKE,                            ECF CASE
        Plaintiffs,


--against--                                  **<u>AMENDED</u>**

                                     **<u>ANSWER</u>**

PHROSKA LEAKE McALISTER,
        Defendant.
-------------------------------------------------------------x


      Defendant, PHROSKA LEAKE MCALISTER, by her attorney Phroska L. McAlister, Esq. Pro Se, as and for her Answer to the Amended Complaint of the Plaintiffs, named herein, respectfully says as follows:

      1.    Admits the allegations contained in paragraphs 1,2, 4, 5,6, and 7 of the complaint.

      2.    Admits that Plaintiffs Solomon Leake (hereinafter referred to as "Solomon") and Hayden Leake (hereinafter referred to as "Hayden"), are the Defendant, Phroska Leake McAlister's father and mother; and the <u>Four (4)</u> adult children born of their marriage (in order of birth) are: Phroska, Adrianne, Damien and Sundy. Hayden's Two (2) adult children born during her prior marriage are: Harry Crayton and Labarbara Crayton Pugh.

      3.    Denies that she has knowledge or information sufficient to form a belief as to the truth of the allegations, as contained in paragraphs 10, 15, and 21 of the "Amended Complaint."

      4.    Denies each of the allegations, as contained in paragraphs 8, through 38 of the Amended Complaint.

## AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

<u>First Defense</u>

5. Defendant repeats and re alleges each and every defense and allegation contained in her Answer, dated July 27, 2007 pursuant paragraphs 1 through 22, and says as follows:

<u>Second Defense</u>
No Cause of Action

6. This complaint is based upon a family quarrel that began at Defendant's birth, more than Sixty 60 years ago. It is a contrivance and an extension of Hayden's dismissed complaint made to the NYS Disciplinary Committee, First Department. Which complaint demanded, that Defendant <u>account</u> to Hayden for Solomon's actions regarding the assets and resources, referenced herein, that Solomon repeatedly and emphatically had refused to do.

a) Defendant's relationship with Solomon has always been distinct and separate from Defendant's relationship with Hayden. Defendant did not have and never would not have had any conversation or discussion with Hayden concerning the subject matter of this complaint. Defendant's relationship with Hayden has generally lacked the characteristics of parental devotion, filial piety or bonds *normally* or often associated with mother daughter relationships and was not one based upon trust, confidence or affection. Defendant's function or role viz Plaintiff's, was generally limited to "speaking" to Solomon on Hayden's behalf, when no one else could, after Solomon railed about something Hayden had done or had tried to do.

b) For, approximately ten (10) (uninterrupted) years, prior to 1988, (and at frequent other periods, throughout Defendant's life, Defendant and Hayden did not speak to each other. Solomon wanted "peace" and the ability to "freely" talk and visit with Defendant, which the long standing antipathy between Defendant and Hayden, made impossible. Thus, Solomon <u>agreed</u> to sell Plaintiff's Bronx, New York home, (owned by the entirety) and move to Virginia, (Hayden's home town) only upon **upon certain conditions.** Two of said conditions were that, Hayden and Defendant *establish* (at least) cordial relations with each other and that Defendant was the Closing attorney and Escrow agent re the sale and purchase of Plaintiffs home. After

Defendant distributed the sale proceeds to Plaintiffs, in equal **separate drafts**, Defendant's "attorney" fiduciary relationship with Plaintiffs, ended and was not resumed.

c) Defendant was not privy to information concerning savings, securities or other assets jointly or separately owned by Hayden.

d) Defendant was not privy to any understanding or agreement between Plaintiffs, concerning their joint assets or resources, except that that they would retain their separate accounts and Solomon would continue to be responsible for paying the majority of Plaintiff's household costs and expenses, from Solomon's monthly income.

e) Defendant never made any promise or representation to Plaintiffs that she would act as their trustee, or that she was qualified in any way to be Plaintiff's "investment manager." Defendant was not privy to any discussion Solomon and Hayden may have had with each about any joint accounts they may have had at any time as referenced in this complaint; and Defendant did not close, change, conspire to change or transfer any asset, resource or account jointly held by Plaintiffs.

f) <u>In or about 1978,</u> Defendant was appointed Solomon's Power of Attorney and Health Care Proxy. In or about 1990, Defendant was appointed Solomon's General Power of Attorney and Health Care Proxy. In or about 1998, Solomon updated and revised the 1990 Power of Attorney, to include his son Damien as a substitute or succeeding Power of Attorney, in the event Defendant could not serve. However, Defendant did not exercise a Power of Attorney over Plaintiff's joint or separate accounts, as referenced in this complaint. Upon information and belief, during all times mentioned herein, Hayden and Solomon did not have a Power of Attorney or Proxy for each other.

<u>Third Defense</u>

Statute of Limitations

7. The right of action set forth in this complaint is barred, in whole or part, by the Statute of Limitations. The matters as alleged, are claimed to have occurred more than Six (6) years ago and more than Three (3) years ago. Solomon made Defendant sole owner and beneficiary of the referenced Hartford Life account and Second/Dual

Signatory, on the UBS, formerly Paine Webber "Resource Management Account," that Solomon established <u>on or about 1999</u>. Defendant was made a joint owner with Solomon, on a Virginia, Bank of America checking account, <u>since on or about 2003</u>, from which Plaintiff's household and personal expenses were regularly paid.

<u>Fourth Defense</u>

<u>Collateral Estoppal and Laches</u>

8. The right of action as set forth in this complaint is barred, in whole or part, by Collateral Estoppal and Laches. Solomon's current ability to explain and confirm his earlier actions, authorizations, knowledge and intentions, to testify on his own and on Defendant's behalf; or to act independently in any way, without fear of reprisal, from Hayden, Adrianne and Sundy, has degraded and has been intentionally and severely compromised in the years, since 1999 and 2003, by Plaintiff Hayden Leake, to Defendant's prejudice.

<u>Fourth Defense</u>

<u>No Constructive Trust</u>

9. No promise was made, implied nor can be inferred by reliance upon Hayden's alleged confidential relationship or blood ties with Defendant. Hayden and Defendant have dealt with each other as sparingly as possible and trust or confidence is not a characteristic of their relationship with each other.

10. Defendant has never expressed, implied or made any representation to Plaintiff's, jointly or separately, that Defendant would invest their assets or funds," or that Defendant was in any way versed in financial investment matters.

11. Defendant did not have an ongoing attorney client relationship with Plaintiffs.

12. Defendant did not have an oral Trust or Fiduciary Agreement or understanding, with Plaintiffs, except as stated herein.

<u>Fifth Defense</u>

<u>No Breach of Trust or Fiduciary Duty</u>

13. Defendant did not breach a trust or fiduciary duty to Plaintiffs, as an

attorney, attorney in fact and/or trustee. Defendant's actions, during all time mentioned herein, have been consistent with Solomon's directions, intentions, authorizations and approval.

### Sixth Defense

### No Conversion

14. Defendant did not convert or exercise unauthorized possession, ownership or control of any of Plaintiff's assets. Solomon's consent, approval and knowing authorization was given at all times mentioned herein. Upon information and belief, Hayden's knowledge, consent or authorization concerning what Solomon did or did not do with his assets or with Defendant, was not required.

15. During all the times mentioned herein, Solomon had the unrestricted right to give his assets to his wife, to any or all of his children or to anyone else. Solomon did not loose that fundamental right because he may now be incapacitated, because of "future," "marital" or "elective" interests or shares, his wife, might be entitled to claim, under the laws of New York or Virginia; or because of Hayden's unfounded and oft stated belief that Solomon did not have the right such rights, although she did.

16. Defendant was Solomon's confidant and has acted as Solomon's proxy, agent etc., re various matters, for more than thirty (30) years, as a beloved daughter. But, Defendant's relationship with Solomon, as described herein, was exclusive.

17. Defendant admits receiving substantial money gifts and transfers from Solomon, beginning in the 1990s. However, such gifts and transfers from Solomon, were intentionally and voluntarily made, directed and authorized by Solomon.

### Seventh Defense

### No Fraud, No Secrecy & No Failure to Disclose

18. Defendant did not make any false or untrue representations or promises to Plaintiff's concerning investment or management of any asset or funds. Defendant did not engage in fraudulent or secretive acts of any kind with respect to Plaintiff's assets or funds. During all the times mentioned herein, Solomon had complete access, information and advice, concerning any and all assets and accounts, from third parties.

### Eighth Defense

### No Unjust Enrichment

19. Defendant was not unjustly enriched and Defendant did not receive any asset or benefit that she was not voluntarily and intentionally given, by Solomon.

### Ninth Defense
### Account Statements

20. Upon information and belief, any and all Statements of Account, Returns, Advice or confirmations required, necessary or available, respecting **any** statement, account, expenditure, allocation, gift, transfer or use of Solomon's assets or funds were <u>received</u> from Defendant and from "Third" parties, which were reviewed and approved by Solomon **contemporaneous** with any and all expenditures, allocations, transfers, gifts or use of said asset or funds.

21. Hayden, knows and has admitted to others that Defendant never "invested" or "managed" Plaintiff's savings and investments for "their" benefit; nor done anything for or on behalf of Solomon without his actual knowledge and direction. Further, Hayden admitted in her complaint **for an accounting and sanctions against Defendant, to the NYS Attorney Disciplinary Committee, First Department,** and to Labarbara, that her *real* complaint was that Defendant **"permitted"** Solomon, to do whatever he wanted to do, without sanction, from her.

22. Defendant cooperated with the investigation and answered the several complaints Hayden filed and had filed with the Attorney Disciplinary Committee, for approximately two years. When the matter was referred, Defendant agreed to Arbitration of Hayden's complaint, upon condition, that Hayden and Solomon appear in person, and not by Defendant's siblings. Hayden declined Defendant's condition, the matter was referred back to the Committee and was Dismissed.

### Tenth Defense

### Hayden Lacks Capacity and Standing

23. Hayden lacks capacity and standing to sue Defendant, in her own name in law or equity. And, this second attempt of Hayden's to "bootstrap" her fabricated claims to Defendant's lawyer or daughter status, is a contrivance, frivolous and a

malicious abuse of process.

24. Defendant has never had Hayden's power, authority agency or proxy to act as her attorney, attorney-in fact, fiduciary or trustee. Nor, has Defendant at any time, jointly or separately had a conversation, understanding or agreement with Hayden, respecting Solomon or Hayden's savings and investments,

25. Defendant is not accountable or indebted to Hayden, separately upon a "derivative, "representative," " marital property" claim or cause of action, nor upon a "constructive trust" theory, with respect to any asset or funds held in Plaintiff Solomon 's name alone. Plaintiff Solomon, Hayden's husband, is not deceased. This is not an estate, personal injury or matrimonial action. Defendant was not a party to any Agreement or understanding Plaintiff's may or may not have had with each other concerning their respective assets and resources.

26. Solomon did not replace Defendant, as his proxy and power of attorney, voluntarily or in disavowal of Defendant or her conduct at any time, with respect to any matter. The document/s purportedly made in 2006, allegedly appointing Adrianne & Sundy in Defendant's (or Damien's) place and stead, were obtained by fraud, coercion, undue influence, abuse and intentional medical mismanagement of Solomon Leake.

WHEREFORE, Defendant, demands judgment against the Plaintiffs dismissing the complaint in all respects and for such other and further relief as this Court may deem just and proper.

Dated: November 9, 2007
New York, New York

_____
PHROSKA L EAKE McALISTER
DEFENDANT - PRO SE, d/b/a
PHROSKA LEAKE McALISTER, ATTORNEY
116 West 23rd Street 5th Floor # 197
New York, NY 10011
212- 475-7085

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

SOLOMON LEAKE and                    07 Civ. 2947 (CM)
HAYDEN MAE LEAKE,                    ECF CASE

               Plaintiffs,

   --against--

PHROSKA LEAKE McALISTER,

              Defendant.

------------------------------------------------------------x


## AMENDED ANSWER

PHROSKA L. McALISTER, Esq.,

Pro Se Attorney for

Defendant, Phroska Leake McAlister,

116 West 23rd Street 5th Floor  #197

New York, NY 10011

212- 475- 7085


**To:**   USDC Clerk of the Court

William A. Simon

McGarry & Simon

317 Madison Avenue Suite 1511

New York, New York 10017-5021

212- 867-0100