**DRAFT OF August 15, 2008**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
SOLOMON LEAKE and
HAYDEN MAE LEAKE,

                                                    JOINT PRETRIAL ORDER
                              Plaintiffs,

              -against-                              07 Civ. 2947 (CM)

PHROSKA LEAKE McALISTER,                             ECF CASE

                              Phroska.
-----------------------------------------------------x

        The parties having conferred among themselves and with the Court pursuant to Fed. R.
Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order
herein.

## I. NATURE OF THE CASE

        This is an action by plaintiffs, Solomon Leake ("Solomon") and Hayden Mae Leake
("Hayden"), against their adult daughter, defendant Phroska Leake McAlister, to recover on
various grounds for certain bank and securities accounts which were owned by one or both of the
plaintiffs and were placed under the legal control of the defendant. The plaintiffs seek a
judgment *inter alia* directing defendant to account to them for her alleged acts as trustee and/or
attorney-in-fact and to pay over to them all proceeds of these accounts remaining in her hands;
for a money judgment for damages on grounds of breaches of trust and fiduciary duty and
conversion; for the imposition of a constructive trust; and for costs and the reasonable fees and
disbursements of their attorneys.

## II. JURY/NON JURY

        The parties have stipulated that this action will be tried by the Court without a jury.  It is
estimated that the trial will last five (5) days.

## III. STIPULATED FACTS

        1.      Plaintiffs reside in Hampton, Virginia.

        2.      Defendant resides in New York, New York.

        3.      The matter in controversy exceeds, exclusive of interest and costs, the sum
specified by 28 U.S.C. 1332.

4.  Plaintiffs are husband and wife, and are the parents of the defendant; of two other adult daughters, Sundy L. Leake and Adrianne V. Leake-Gaylord; and of one adult son, Damien Leake.

5.  Defendant was born January 30, 1947 and is the oldest of the foregoing children.

6.  Plaintiff Hayden Leake also has two adult children from a previous marriage, Harry Crayton and Labarbara Crayton Pugh.

7.  Plaintiff Solomon Leake  born on July 23, is approximately  90 years of age.

8.  Plaintiff Hayden Mae Leake was born on December 29, 1917, and is now more than 90 years of age.

9.  Defendant is and at all times since 1983 has been an attorney-at-law admitted to practice in the State of New York.

10.  Defendant served as plaintiffs' attorney for the sale of their prior residence, located at 3123 Gunther Avenue, Bronx, New York, and the purchase of their current residence, located at 28 Lynnwood Drive, Hampton, Virginia, in or about 1988, and she received a fee for that legal work.

11.  In or about 1978 plaintiff Solomon Leake executed a power of attorney naming defendant as his attorney-in-fact.

12.  In or about 1990 plaintiff Solomon executed a new power of attorney naming defendant as his attorney-in-fact.

13.  In or about 1990 plaintiff Solomon executed a health care proxy naming defendant as his health care agent.

14.  On or about January 28, 1999, plaintiff Solomon executed a power of attorney appointing defendant as his attorney-in-fact.

<u>Establishment of the UBS PaineWebber Account</u>

15.  In or about January of 1999, Account No. WE 35517 39 was opened in the name of Solomon Leake  at PaineWebber Inc. in New York (which changed its name to "UBS PaineWebber" in or about June 2001 and to "UBS Financial Services Inc." in or about June of 2003). The entity is hereinafter referred to as "UBS PaineWebber" and said account is hereinafter referred to as the "UBS PaineWebber Account."

16.     Shortly thereafter, defendant filed with UBS PaineWebber, the power of attorney dated January 28, 1999, appointing defendant as his attorney-in-fact.
.

17.     On February 18, 1999 defendant executed an Affidavit of Agent representing *inter alia* that she was the attorney-in-fact appointed in the Power of Attorney dated January 28, 1999 and that the Power of Attorney was in full force and effect. Shortly thereafter defendant filed said Affidavit of Agent with UBS PaineWebber.

<u>Purchase and Surrender of Hartford Life Annuity</u>

18.     On or about June 11, 1999, defendant, acting as "Power of Attorney for Solomon Leake" executed an application to purchase, for $75,000, an Annuity Contract with Hartford Life in which defendant would be the Annuitant and sole Beneficiary.

19.     Ann J. Lemon, the Financial Advisor on the UBS PaineWebber Account, was listed as the Licensed Agent on the aforesaid application.

20.     On June 9, 1999, the sum of $75,000 was paid from the UBS PaineWebber Account to Hartford Life for the Annuity Contract.

21.     On or about June 15, 1999 Hartford Annuity Contract No. 12000 / 710606499 (the "Hartford Annuity Contract") was issued, listing Solomon Leake as contract Owner and Participant, c/o defendant's address, bearing his Social Security Number as "Tax ID," and listing defendant as Annuitant and sole Beneficiary and Ann J. Lemon as Licensed Representative.

22.     On or about March 13, 2003, defendant submitted two separate surrender applications to Hartford Life, resulting in a withdrawal of a total of $10,854.37 from the Hartford Life Annuity Contract, which funds were wired to the UBS PaineWebber Account on or about March 17, 2003.

23.     On or about December 31, 2003, defendant surrendered the full amount of the Hartford Annuity Contract, for which she received payment of more than $89,487.53.

<u>Withdrawals from UBS PaineWebber Account</u>

24.     By letter dated December 20, 1999, defendant instructed UBS PaineWebber to wire $2,500 from the UBS PaineWebber Account to Solomon Leake's account at Bank of America (formerly NationsBank) in Hampton, Virginia, and said transfer was made on December 21, 1999.

25.    Defendant caused UBS PaineWebber to disburse $1,852 from the UBS PaineWebber Account to the Internal Revenue Service by Check No. WE97561 dated April 4, 2000.

26.    Defendant caused UBS PaineWebber to wire $3,000 from the UBS PaineWebber account to Solomon Leake's account at Bank of America in Hampton, Virginia, and said transfer was made on November 8, 2001.

27.    Defendant caused UBS PaineWebber to wire $4,500 from the UBS PaineWebber Account to Solomon Leake's checking account at Bank of America in Hampton, Virginia, on or about March 13, 2003 incurring a wire transfer fee of $25.00.

28.    The following additional withdrawals were made and fees incurred by defendant from the UBS PaineWebber Account:

a.    Withdrawal in the amount of $2,700 made by Check No. WE97562 payable to defendant on or about April 4, 2000 and deposited in defendant's checking account No. 77707808 at Amalgamated Bank.

b.    Withdrawal in the amount of $3,500 made by Check No. WE02380 payable to defendant on or about June 23, 2000 and deposited in defendant's checking account No. 77707808 at Amalgamated Bank.

c.    Federal funds transfer of $12,000 to defendant's checking account No. 77707808 at Amalgamated Bank made on our about August 9, 2000, incurring wire transfer fee of $25.00.

d.    Federal funds transfer of $5,000 to defendant's checking account No. 77707808 at Amalgamated Bank made on our about August 9, 2000, incurring wire transfer fee of $25.00.

e.    Federal funds transfer of $6,500 to defendant's checking account No. 77707808 at Amalgamated Bank made on our about May 10, 2001, incurring wire transfer fee of $25.00.

f.    Withdrawal in the amount of $6,500 made by Check No. WE04601 payable to defendant on or about August 29, 2001 which was deposited in defendant's checking account No. 77707808 at Amalgamated Bank.

g.    Withdrawal in the amount of $6,500 made by Check No. WE07917 on or about November 8, 2001 which was deposited in defendant's checking account No. 77707808 at Amalgamated Bank .

h.    Federal funds withdrawal of $7,500 made on or about June 11, 2002, incurring wire transfer fee of $25.00. These funds were transferred to the account no. 007 1

-4-

303259 entitled "Phroska L. McAlister, Attorney IOLA" at: Chase Manhattan Bank, N.A.

i.      Federal funds transfer of $5,000 to defendant's checking account No. 77707808 at Amalgamated Bank on or about April 1, 2003, incurring wire transfer fee of $25.00.

j.      Federal funds transfer of $4,025 to defendant's checking account No. 77707808 at Amalgamated Bank on October 10, 2003, incurring wire transfer fee of $25.00.

29.    The funds so withdrawn by defendant and listed in the preceding paragraph total $59,225, and the fees total $150.

30.    As of October 31, 2003 the value of the UBS PaineWebber Account was $2,077.59.

Defendant's Actions as Joint Signatory of
Solomon Leake's Account at Bank of America

31.    On or about January 30, 2004, plaintiff Solomon Leake and defendant both signed a signature card making each of them (acting individually) a signatory on plaintiff Solomon Leake's Bank of America checking account number 0000 8229 47866 and converting the account to a joint account.

32.    Defendant wrote Check No. 3357 on Solomon Leake's Bank of America Account, dated November 2, 2005 in the amount of $3,500, to her own order, signed plaintiff Solomon Leake's name to it as drawer and deposited it in her account No. 77707808 at Amalgamated Bank.

33.    Defendant wrote Check No. 3358 on Solomon Leake's Bank of America account, in or about November of 2005 in the amount of $500 payable to the order of her half-sister, Labarbara Pugh, signed plaintiff Solomon Leake's name to it as drawer and gave it to Labarbara Pugh, who negotiated the check.

34.    On December 2, 2005, defendant transferred $5,000 from the Bank of America Checking Account to her own Paypal account.

35.    On January 11, 2006, defendant transferred $1,500 from the Bank of America Checking Account to her own Paypal account.

## IV. PARTIES' CONTENTIONS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

### A. 1. Plaintiffs' Proposed Findings of Fact

1.    Between December 1, 1998 and April 30, 2004, there was a relationship of trust and confidence between each of the plaintiffs and the defendant, which was based, among other things, upon defendant's legal education and experience, her service to plaintiffs as an attorney at law, and her being their eldest daughter. [Testimony of plaintiffs, Sundy Leake ("Sundy") and Adrianne Leake-Gaylord ("Adrianne")]

2.    Defendant on several occasions acted as an intermediary in disputes between plaintiffs Solomon and Hayden. [Transcript of defendant's deposition ("Phroska Trans.") P29, L8 through P20, L19]

3.    Since at least 1997, plaintiff Solomon has suffered from neurological impairments affecting his ability to manage his financial affairs. [Testimony of plaintiffs, Sundy and Adrianne]

4.    In or about late 1998 and early1999, defendant represented and promised to plaintiffs that if they would transfer their financial assets into her control, she would act as trustee of said assets, would manage them and invest them in "better performing" accounts, would collect the income from those assets, and would pay out such part of the income and principal to or for the benefit of plaintiffs as would be necessary and appropriate for their living expenses, their health, safety, comfort and well being, and their other needs. [Testimony of plaintiffs, Sundy, and Adrianne]

5.    Although the UBS PaineWebber Account was opened in Solomon's name, it was defendant who arranged for the opening of the account. [PX 7, 8, 20]

6.    Solomon Leake was the only signatory on the application for the UBS PaineWebber Account and was at all times the only authorized signatory on the account, and the Social Security Number on the account was his. [PX8]

7.    On or about January 28, 1999, in furtherance of the aforementioned trust arrangement, plaintiff Solomon Leake, at the request of defendant, executed a power of attorney appointing defendant as his attorney-in-fact . [Testimony of plaintiffs, Sundy, and Adrianne; PX 9, 10]

8.    Shortly after plaintiff Solomon Leake executed the power of attorney to defendant on January 28, 1999, defendant filed it with UBS PaineWebber. [PX 9, 10]

9.      The Power of Attorney signed by plaintiff Solomon Leake on January 28, 1999 was defendant's sole source of legal authority over the UBS PaineWebber Account. [PX 7, 8, 20]

10.      At all times plaintiff Solomon Leake was the sole legal owner of the UBS PaineWebber Account. [PX 7, 8, 20]

11.      Monthly statements for the UBS PaineWebber Account from the first such statement, for May 1999, through August 2007, were mailed to "Solomon Leake c/o Phroska Leake McAlister" at defendant's address. [PX20]

12.      From the opening of the UBS PaineWebber Account through May of 2005, Ann J. Lemon of UBS PaineWebber was the "Financial Advisor" assigned to the account. [PX20]

### Transfer of Joint Franklin Templeton Account to UBS PaineWebber

13.      On or about January 28, 1999, in reliance upon defendant's promises and representations, plaintiffs executed a document to transfer their jointly held Franklin Templeton Account Number 11502241113 (the "Franklin Templeton Account") into the sole name of plaintiff Solomon Leake and to transfer the account from Merrill Lynch to UBS PaineWebber as Dealer. [PX 11, 12, 13, 14, 15, 20]

14.      As of February 19, 1999, the plaintiffs jointly owned the Franklin Templeton Account containing shares of Franklin New York Tax-Free Income Fund - Class A (USIP No. 354130106, Symbol FNTX), with Merrill Lynch Pierce Fenner & Smith ("Merrill Lynch") as Dealer. [PX11, 12]

15.      On or about February 19, 1999, defendant faxed to UBS Paine Webber the documents transferring the Franklin Templeton Account to UBS PaineWebber, which became the Dealer on the account and registered it in the sole name of plaintiff Solomon Leake. [PX 11, 12, 13, 14, 15, 20]

16.      The removal of plaintiff Hayden Leake's name from the title of the Franklin Templeton Account was done in furtherance of the aforementioned trust arrangement. [Testimony of plaintiffs, Sundy, and Adrianne]

17.      As of May 21, 1999, the Franklin Templeton Account contained 9,360.773 shares of Franklin New York Tax-Free Income Fund - Class A, and was held in an account in the name of Solomon Leake individually, for which PaineWebber was listed as Dealer. [PX15]

18.      On May 21, 1999 the 9,360.773 shares of Franklin New York Tax-Free Income Fund - Class A were transferred out of the Franklin Templeton Account. [PX15]

19.     On May 24, 1999, the securities that had been held in the Franklin Templeton Account (9,360.773 shares of Franklin New York Tax-Free Income Fund - Class A) were received in the UBS PaineWebber Account, at which time their value was $111,580.41.[PX 20]

### Transfer of the Nuveen Account to UBS PaineWebber

20.     As of February 1, 1999, the plaintiffs jointly owned 4,740.904 shares of Nuveen Flagship VA Municipal Bond Fund Class A (CUSIP No. 67065L690; Symbol FVATX) (the "Nuveen Account") valued at $52,908.49, which were held in NationsBanc Investments, Inc. Account No. W26-787892. [PX 44]

21.     On February 1, 1999, said 4,740.904 shares of Nuveen Flagship VA Municipal Bond Fund Class A were transferred out of plaintiffs' joint NationsBanc Investments Account No. W26-787892, and into a new NationsBanc Investments Account No. W26-015202 in the sole name of plaintiff Solomon Leake. [PX 44, 45]

22.     The transfer of the Nuveen Account from joint ownership into the sole name of plaintiff Solomon Leake was done in furtherance of the aforementioned trust arrangement.  [Testimony of plaintiffs, Sundy, and Adrianne]

23.     On or about April 8, 1999, defendant faxed documents to UBS PaineWebber to transfer the Nuveen Account to the UBS PaineWebber Account. [PX 18]

24.     On May 28, 1999, $208.10 in cash which had been acquired through dividends on the Nuveen shares was transferred out of the joint account W26-787892 and into Account No. W26-015202 in the sole name of plaintiff Solomon Leake. [PX 44, 45]

25.     On or about June 14, 1999, with the assistance of defendant, plaintiff Solomon Leake transferred the 4,808.931 shares of Nuveen Flagship Virginia Municipal Bond Fund, (the "Nuveen Account") valued at $51,744.09, plus cash in the amount of $208.10 from NationsBanc Investments, Inc. Account No. W26-015202, into the UBS PaineWebber Account. [PX 18, 19, 20, 45]

26.     Defendant at all times knew that the source of the funds that were placed in the UBS PaineWebber Account were accounts in the joint names of the plaintiffs.  [Testimony of plaintiffs, Sundy, and Adrianne; Def. Trans. 105, L3-24

Purchase and Surrender of Hartford Annuity Contract

27.    On or about June 9, 1999, defendant, acting as "Power of Attorney for Solomon Leake" used $75,000 from the UBS PaineWebber Account to purchase an Annuity Contract with Hartford Life (the "Hartford Annuity Contract"), in which plaintiff Solomon Leake was named as the Contract Owner and the Participant, and defendant was named as the sole Beneficiary and Annuitant. [PX 20, 21, 22]

28.    At all times plaintiff Solomon Leake was the legal owner of the Hartford Annuity Contract. [PX 20, 21, 22, 28, 29]

29.    The Power of Attorney signed by plaintiff Solomon Leake on January 28, 1999 was defendant's sole source of legal authority over the Hartford Life Annuity Contract. [PX 9, 10, 20, 21, 22, 28, 29]

30.    On or about March 13, 2003, defendant withdrew a total of $10,854.37 from The Hartford Annuity Contract and transferred it to the UBS PaineWebber Account. [PX 20, 28]

31.    On or about December 31, 2003, defendant surrendered the full amount of the Hartford Annuity Contract, for which she personally received payment of over $89,487.53, which funds she used for her own personal purposes and no part of which funds she used for the benefit of the plaintiffs, or either of them. [PX 20, 29]

32.    Due to the withdrawals made by defendant from the Hartford Annuity Contract as set forth in the two preceding paragraphs, plaintiff Solomon Leake's 2003 federal tax was increased by $2,894, which he paid off, together with interest of $457, for a total of $3,351. [PX 30, 34, testimony of Hayden and Sundy]

Defendant's Withdrawals from the UBS PaineWebber Account

33.    Between April 4, 2000 and October 10, 2003, defendant, by means of checks and wire transfers, paid herself the total sum of $59,225 from the UBS PaineWebber Account, all of which was used for her own personal purposes, and no part of which was used for the benefit of the plaintiffs or either of them. [PX 20, 23, 24, 25, 26, 27, 31, 32]

34.    The UBS PaineWebber Account was charged a total of $150 in transfer fees for the transfers referred to in the preceding paragraph. (PX 20)

-9-

Defendant's Actions as Joint Signatory of
Solomon Leake's Account at Bank of America

35.    In approximately December of 2003 through February of 2004, Solomon Leake experienced a crisis in his neurological disease. [Testimony of plaintiffs, Sundy and Adrianne]

36.    On or about January 30, 2004, based upon his relationship of trust and confidence with the defendant, plaintiff Solomon Leake changed the title of his checking account No. 0000 8229 47866 at Bank of America (the "Bank of America Account"), from Solomon's sole name into the joint names of Solomon Leake and Phroska Leake McAlister. [Testimony of plaintiffs, Sundy, and Adrianne; PX 33, 34]

37.    Said change of the title was not for purposes of actual joint ownership, but for purposes of convenience, so that defendant could pay Solomon's bills. [PX 34, 37, 38; Def. Trans P265, L10 through P278, L24]

38.    Defendant remained a signatory on said account until in or about September of 2006. [PX 34]

39.    From February of 2004 until approximately May of 2005, defendant received monthly statements of said account. [PX 34]

40.    During the period when defendant was a signatory on said checking account she paid many of plaintiff Solomon Leake's bills electronically, including bills for credit cards, cable television, electricity, gas, water, real estate taxes, and automobile insurance, and made other electronic payments. [Def. Trans. P318, L13 through P323, L7; PX34]

41.    Defendant withdrew and paid at least $10,500 from the Bank of America Account for her own benefit and that of her half-sister, Labarbara Pugh. [Testimony of plaintiffs, Sundy, and Adrianne; PX 34, 37, 38]

42.    Plaintiffs and each of them have demanded an accounting from defendant of her actions as both trustee and attorney-in-fact, and defendant has failed to render an accounting in either capacity. [PX 1, 2, 3, 4, 5, 6; testimony of Hayden, Sundy and Adrianne]

43.    In late 1998 and early 1999, defendant as aforesaid represented and promised to the plaintiffs that she would invest and use the assets which plaintiffs put under her control exclusively for plaintiffs' benefit. [Testimony of plaintiffs, Sundy, and Adrianne]

44.    Thereafter and until the commencement of this action, defendant continually represented to plaintiffs that she was acting as trustee and/or attorney-in-fact with respect to said funds, and concealed from them the fact that she was instead using said funds for her own benefit. [Testimony of plaintiffs, Sundy, and Adrianne]

45.     Defendant's aforesaid representations and concealments were false; defendant knew them to be false; defendant made such representations and concealments for the purpose of inducing plaintiffs and each of them to rely upon them; plaintiffs justifiably believed and relied on said representations and concealments in transferring said assets to defendant's control and in failing to demand return of said funds; and plaintiffs have been damaged by said false and fraudulent representations and concealments. [Testimony of plaintiffs, Sundy, and Adrianne]

<u>Plaintiff Hayden Leake's Demands for an Accounting</u>

46.     Hayden Leake sent a letter dated May 9, 2004 to all of her children (including the defendant) stating that a few years previously plaintiffs had turned over assets to defendant and that Hayden Leake wanted to know "where the money went." [PX1; testimony of Hayden, Sundy and Adrianne]

47.     Defendant replied with a letter dated May 29, 2004 in which defendant referred to Hayden Leake's letter as a demand that defendant be held "accountable". [PX2]

48.     In or about June of 2004, Hayden Leake filed a grievance with the Departmental Disciplinary Committee of the First Department, including a letter written by her daughter Adrianne Leake-Gaylord stating that Hayden Leake had asked the defendant several times about the money and defendant had replied that she did not want to discuss it. Hayden Leake requested an "investigation and remedy." [PX 3,4]

49.     Also enclosed with the grievance was a handwritten complaint from plaintiff Hayden Leake stating that she had asked defendant both in letters and orally for information but that defendant had refused to provide it. [PX 6]

50.     In a further letter to the Committee dated December 5, 2004, Hayden Leake stated: "I want an accounting of where and how the money was managed."

51.     Defendant received from the Committee copies of all of the aforementioned documents that were filed with the Committee.

**A.2. Plaintiffs' Proposed Conclusions of Law**

FIRST CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
(TRUST ACCOUNTING)

1.      A relationship of trust and confidence existed between plaintiff Solomon Leake and the defendant throughout the period from the beginning of 1978 through November 30, 2005.

2.      From December, 1998 through January, 2006, a fiduciary relationship existed between plaintiff Solomon Leake and defendant.

3.      From December, 1998 through May, 2004, a fiduciary relationship existed between plaintiff Hayden Leake and defendant.

4.      In January 1999, plaintiffs entrusted the assets in their joint Franklin Templeton Account to defendant.

5.      In January 1999, plaintiffs entrusted the assets in their joint Nuveen Account to defendant.

6.      In January 2004, plaintiff Solomon Leake entrusted the assets in his Bank of America Checking Account to defendant.

7.      Valid trusts of the assets in the Franklin Templeton Account and the Nuveen Account were established between plaintiffs, as grantors and beneficiaries, and defendant, as trustee. *Brown v. Spohr,* 180 N.Y. 201, 209 (1904).

8.      A valid trust of the Bank of America Checking Account was established between plaintiff Solomon Leake as grantor and beneficiary, and defendant as trustee. *Id*.

9.      Plaintiffs and each of them have demanded that defendant render an account of her actions as trustee of the foregoing assets.

10.     Defendant has failed and refused to render an account of her actions as trustee of the foregoing assets.

11.     Plaintiffs have no adequate remedy other than an accounting.

12.     Plaintiffs are entitled to an order directing defendant as trustee to account to them for her administration of the assets that were derived from their joint Franklin Templeton Account.

13.     Plaintiffs are entitled to an order directing defendant as trustee to account to them for her administration of the assets that were derived from their joint Nuveen Account.

14.     Plaintiff Solomon Leake is entitled to an order directing defendant as trustee to account to him for her administration of his Bank of America Checking Account.

SECOND CLAIM FOR RELIEF, BY PLAINTIFF SOLOMON LEAKE
(ACCOUNTING BY ATTORNEY-IN-FACT)

15.     Defendant used her authority as attorney-in-fact for Solomon Leake to make deposits in and withdrawals from and otherwise to exercise control over the UBS PaineWebber Account, including without limitation the purchase of the Hartford Annuity Contract.

16.     Defendant used her authority as attorney-in-fact for Solomon Leake to establish, make withdrawals from, and otherwise exercise control over the Hartford Annuity Contract.

17.     A fiduciary relationship existed between plaintiff Solomon Leake .and defendant with respect to all of the assets in the UBS PaineWebber Account.

18.     Plaintiff Solomon Leake entrusted the assets in UBS PaineWebber Account to defendant.

19.     Plaintiff Solomon Leake has no adequate remedy other than an accounting.

20.     Plaintiff Solomon Leake or other persons acting on his behalf have demanded an accounting of defendant's acts as his attorney-in-fact.

21.     Defendant has failed and refused to account to plaintiff Solomon Leake for her acts as his attorney-in-fact.

22.     Plaintiff Solomon Leake is entitled to an order directing defendant to account to him for her acts as his attorney-in-fact with respect to the assets that were placed in the UBS PaineWebber Account. *In re Mary XX.* 33 A.D.3d 1066, 822 N.Y.S.2d 659 (3d Dep't 2006).

THIRD CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
(BREACH OF TRUST AND BREACH OF FIDUCIARY DUTY)

23.     Defendant has breached her fiduciary duty as trustee to plaintiffs jointly with respect to the assets that were derived from their Franklin Templeton Account.

24.     Defendant has breached her fiduciary duty as trustee to plaintiffs jointly with respect to the assets that were derived from their Nuveen Account.

25.    Plaintiffs are entitled to the amount of loss they sustained due to defendant's breach of fiduciary duty, including lost opportunities for profit. *E. W. Bruno Company v. Friedberg*, 21 A.D.2d 336, 250 N.Y.S.2d 187 (1st Dep't 1964); *105 East Second Street Associates v. Bobrow*, 175 A.D.2d 746, 573 N.Y.S.2d 503 (1st Dep't 1991).

26.    The value of plaintiffs' Franklin Templeton Account as of May 24, 1999, was $111,580.41.

27.    The cumulative total return of Franklin New York Tax-Free Income Fund over the past ten years has been 50.79 percent, making plaintiffs' lost profit on that fund $56,671.69.

28.    Plaintiffs' total damages for the misappropriation of the Franklin Templeton Account is $168,252.10.

29.    The value of the Nuveen Account as of May 24, 1999 was $53,206.36.

30.    The cumulative total return on the Nuveen Flagship Virginia Municipal Bond Fund over the past ten years has been 43.9%, making plaintiffs' lost profit on that fund $23,357.59.

31.    Plaintiffs' total damages for the misappropriation of the Nuveen Account is $76,563.95.

32.    Plaintiffs' total joint damages for the misappropriation of the Franklin Templeton Account and the Nuveen Account is $244,816.05, for which defendant is liable to plaintiffs jointly and severally.

33.    Plaintiff breached her fiduciary duty as trustee by liquidating plaintiffs' triple tax-exempt investments and reinvesting the proceeds in the Hartford Annuity Contract, then terminating that in 2003, resulting in taxable income to plaintiff Solomon Leake and requiring him to pay $3,351 in additional federal income tax and interest; and plaintiffs have been damaged in that amount.

34.    Alternatively, defendant is liable to plaintiff Solomon Leake for breach of her fiduciary duty as attorney-in-fact in the total amount of $248,167.05. *See Matter of Ferrara*, 7 N.Y.3d 244, 852 N.E.2d 138, 819 N.Y.S.2d 215 (2006). A power of attorney is clearly given with the intent that the attorney-in-fact will utilize that power for the benefit of the principal . . .." *Mantella v. Mantella,* 268 A.D.2d 852, 701 N.Y.S. 2d 715 (3d Dep't 2000). The attorney-in-fact must act in the utmost good faith and undivided loyalty toward the principal, and must act in accordance with the highest principles of morality, fidelity, loyalty and fair dealing . . ." *Semmler v. Naples,* 166 A.D.2d 751, 752, 563 N.Y.S.2d 116 (3d Dep't 1990).

35.    Defendant breached her duty to plaintiff Solomon Leake as trustee by paying to herself $10,000 and to her half-sister, Labarbara Pugh $500 from Solomon Leake's Bank of America Checking Account, and is liable to him for those amounts, plus interest.

### FOURTH CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
### (CONVERSION)

36.    Defendant has converted to her own use funds from the UBS PaineWebber Account in the amount of $59,350, and from the Hartford Annuity Account in the amount of $89,487.53, making a grand total of $148,837.53. Since the source of these funds was the plaintiffs' joint Franklin Templeton Account and joint Nuveen Account, defendant is liable to the plaintiffs jointly for conversion in that amount plus interest.

37.    Defendant has converted to her own use the amount of $10,500 from plaintiff Solomon Leake's Bank of America Checking Account, and is liable to him individually for conversion in that amount, plus interest.

### FIFTH CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
### (FRAUD)

38.    Defendant committed fraud in gaining control of plaintiffs' funds by falsely representing to plaintiffs that she would manage and use the assets for their benefit, and later by failing to disclose to them that she was not using the funds for their benefit, but was using them for her own personal benefit.

39.    Plaintiffs' damages for defendant's fraud are calculated under the "out-of-pocket" rule, which entitles plaintiffs to the actual pecuniary loss they sustained as direct result of the wrong. The loss is computed by ascertaining the difference between the value of the bargain which plaintiffs were induced by fraud to make and the amount or value of the consideration that was exacted as the price of the bargain. *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996).

40.    Because the bargain made between the parties was that defendant would place the funds in an investment that would perform better than the investments in which the funds were then placed, the minimum "value of the bargain" can be measured by the performance of those existing investments in the ensuing years.

41.    The value of plaintiffs' Franklin Templeton Account as of May 24, 1999, was $111,580.41. The cumulative total return of Franklin New York Tax-Free Income Fund over the past ten years has been 50.79 percent. Therefore, defendant's fraud caused plaintiffs to lose profits of $56,671.69 on that investment. When added to the principal, which has not been returned, plaintiffs' minimum total damages for defendant's fraud in connection with the Franklin Templeton Account is $168,252.10.

-15-

42.     The value of plaintiffs' Nuveen Account holdings as of March 31, 1999, was $53,206.36. The cumulative total return on that fund over the past ten years has been 43.9%. Therefore, defendant's fraud caused plaintiffs to lose profits of $23,357.59 on that investment. When added to the original principal, which has not been returned, plaintiffs' total minimum damages for defendant's fraud in connection with the Nuveen Account is $76,563.95.

43.     Therefore, plaintiffs' minimum total joint damages with respect to the funds derived from the Franklin Templeton and Nuveen Accounts is $244,816.05.

44.     Defendant also defrauded plaintiff Solomon Leake by removing $10,500 from his Bank of America Checking Account for her own purposes, and is liable to him individually in that amount, plus interest.

45.     As a result of defendant's fraud, and her termination of the Hartford Annuity Contract, plaintiff Solomon Leake was required to pay an additional $3,351 in federal income tax and interest from 2003, and suffered damage in that amount, plus interest.

SIXTH CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
(CONSTRUCTIVE TRUST AND UNJUST ENRICHMENT)

46.     Between December 1, 1998 and April 30, 2004 a relationship of trust and confidence existed between plaintiffs, and each of them, on the one hand, and defendant on the other.

47.     The said relationship of trust and confidence between Solomon Leake and defendant continued until at least January 31, 2006.

48.     In late 1998 and early 1999 defendant promised, expressly or impliedly, that she would invest the proceeds of plaintiffs' Franklin Templeton Account and Nuveen Account in a better performing investment and use the principal and income thereof for plaintiffs' benefit.

49.     In reliance on the foregoing promise, plaintiffs transferred their Franklin Templeton Account and their Nuveen Account to defendant's control.

50.     Defendant transferred the assets from the Franklin Templeton and Nuveen Accounts to the UBS PaineWebber Account, which was titled in the name of plaintiff Solomon Leake and which defendant controlled through a power of attorney.

51.     Defendant used some of the funds from the UBS PaineWebber Account to purchase the Hartford Annuity Contract.

52.     Between April 4, 2000 and December 31, 2003, defendant paid to herself $59,350 from the UBS PaineWebber Account and $89,487.53 from the Hartford Annuity, making a total of $148,837.53.

53.    In January of 2004 a relationship of trust and confidence existed between plaintiff Solomon Leake and defendant.

54.    In January of 2004, when plaintiff Solomon Leake was experiencing a crisis in his neurological condition, defendant promised him that if she was made a joint owner and individual signatory of his Bank of America Checking Account she would use the account to pay his bills and other disbursements.

55.    In reliance on the foregoing promise, plaintiff Solomon Leake made defendant a joint owner with him and an individual signatory of the Bank of America Checking Account.

56.    Defendant was made a joint owner and an individual signatory of the Bank of America Checking Account by Solomon Leake, not with the intent of making her a beneficial owner, but for convenience purposes only, so that she could pay his bills and make other disbursements from the account for his benefit.

57.    Between November 2, 2005 and January 11, 2006, defendant made disbursements from the Bank of America Checking Account of $10,000 to herself and $500 to her half-sister, LaBarbara Pugh, which disbursements were not for the benefit of or at the direction of plaintiff Solomon Leake.

58.    Defendant has been unjustly enriched by the foregoing transfers of assets to her.

59.    A constructive trust should be declared over the assets thus transferred to defendant in favor of plaintiffs jointly, and plaintiff Solomon Leake individually.


## B.1. DEFENDANT'S PROPOSED FINDINGS OF FACT

**Defendant's Contentions:**

a.    **Defendant's Proposed Findings of Fact:**

Solomon Leake (hereinafter referred to as "Solomon") and Hayden Leake (hereinafter referred to as "Hayden"), are the Defendant, Phroska Leake McAlister's (hereinafter referred to as "Phroska" ) father and mother; and the Four (4) adult children born of their marriage (in order of birth) are: Phroska, Adrianne, Damien and Sundy.  Hayden's Two (2) adult children born during her prior marriage are: Harry Crayton  and Labarbara  Crayton  Pugh.

## Nature of the Case

1.      This action is essentially in the nature of "heart balm tort" claims. For, it is a complaint based a family quarrel that began at Defendant's birth, more than Sixty 60 years ago. It is also a contrivance and an extension of Hayden's 2003, dismissed complaint made to the NYS Disciplinary Committee, First Department. Wherein, Hayden demanded, that Phroska account to Hayden (Adrianne and others) for Solomon's actions via Defendant, regarding certain assets and resources, as referenced herein. Hayden admitted, in the context of her **several complaint letters** (and in conversations with others), that she felt compelled to file the complaint, because her husband (Solomon) had ***refused*** to respond to her demands for an accounting to her, concerning " the money, " which was reflected in account statements and documents, that she found in the house.

## Background

2.      From on and before 1978, 1990 and 1999, Solomon regularly appointed Defendant, his proxy, general power of attorney, agent and attorney in fact. Only once in 1988, (per Defendant's insistence), did Solomon appoint Hayden, as his proxy, power of attorney or attorney in fact, upon the occasion of Plaintiff's purchase of their house in Virginia.

3.      Hayden has never appointed Solomon, as her proxy or power of attorney, nor otherwise permitted Solomon to act individually on her behalf, with respect to "her" separate or their jointly held funds or assets. That position has generally been reserved for Adrianne.

4.      With the exception of when Solomon coerced Hayden into accepting Defendant, as their Closing attorney, in 1988, Defendant has never had Hayden Leake's power authority agency or proxy to act as her attorney, attorney-in fact, fiduciary or trustee. And Defendant has not at any time, since then had any conversations, understandings or agreements with Hayden, respecting Solomon or Hayden's savings or investments.

5.      On or about January 29, 1999, without Defendant's contrivance, prior information, knowledge, nor discussion with Defendant, Solomon and Hayden transferred certain jointly held discretionary funds and assets to Solomon individually.

<u>UBS/ Paine Webber Resource Management Account</u>

6.     Solomon, separately and individually transferred and deposited said "discretionary" funds and assets to a Resource Management Account at Paine Webber, NY, in his name alone, to wit, Solomon Leake % Phroska Leake McAlister, the Defendant. Solomon named and appointed Phroska as a dual Signatory on said account, on the application package form.

7,     From 2000 to 2003, Defendant received the sum of, $ 59,225 via eleven (11) transactions from said Resource Management Account at Paine Webber, UBS, via various transfers, checks and withdrawals, as follows: in 2000, the sum of: $23,200. via four transactions; in 2001, the sum of $19,500. via three transactions; in 2002 $7,500. via one transaction; in 2003 via two transactions the sum of, $9,025.

8.     From 2000 to October, 2003, Solomon received the sum of $11,852 via four (4) transfers, checks and withdrawals, from the Resource Management Account at Paine Webber, UBS. In addition, Solomon received the benefit of

<u>Hartford Life Annuity</u>

9.     On or about 1999, the sum of seventy-five Thousand Dollars, pursuant Solomon's direction, was **<u>Transferred and Assigned</u>**, via Defendant, from Solomon's Resource Management Account at Paine Webber, UBS to a Hartford Life Annuity Contract, which named Defendant as the Annuitant and sole Beneficiary.

10.     On or about January, 2004, Defendant, Surrendered and received the full value of said policy, for her own use and benefit, per Solomon's instructions.

11.     Solomon, contemporaneously received information, confirmations and advice documents from UBS, Hartford Life Annuity Company, Bank of America, his Accountant Reynolds and Defendant, concerning all the aforementioned accounts.

<u>Bank of America Checking Account</u>

12.     On or about 2004, Solomon added Phroska's name as joint co-owner to his individual personal checking account, at Bank of America, in Hampton Virginia.

Subsequently, Defendant paid Plaintiff's monthly/annual personal and household expenses, as indicated by Solomon's prior disbursements and their frequent discussions with each other. (Such expenses included but were not limited to credit card payments, taxes, water, cable sewer, utilities, gifts, donations, contributions, travel expenses, miscellaneous purchases. Solomon expected that his cremation costs, upon his death, would be paid that account. Solomon continued to receive his bank statement, until he cancelled same, retained his check book, credit cards and regularly checked his checking account at the Bank, when he periodically made cash withdrawals, throughout the mentioned period.

13.    In or about 2003 or 2004, Defendant directly and indirectly paid costs expenses and disbursements for Solomon's travel (and return) and living arrangements re four (4) months with Plaintiff's son Damien, in California, in excess of $5000.00

14.    Defendant directly and indirectly paid costs, expenses and disbursements of approximately $3500. For, Solomon, Defendant and Labarbara to attend Solomon's family Reunion in Savanna, GA.. Said visit was a week length.

15.    Solomon declined to attend Damien's wedding due Damien's failure and refusal to specifically invite Hayden and Adrianne to attend, so he petitioned Defendant to "Stand in" or attend in his place and stead. Costs, expenses and disbursements to Defendant of not less than $3500.00.

16.    Solomon specifically charged Defendant to "take care of" Labarbara , (as well as certain other people, situations and things), and specifically approved of the more than $2500 dollars that Defendant "gave Labarbara" from "Pops."

17.    Solomon, contemporaneously received confirmations and advices from UBS, Hartford Life Annuity Company and Bank of America concerning the aforementioned accounts and transactions.

18.    Aaron Reynolds, a certified accountant (in NY and in Virginia) prepared Plaintiff's joint, then separate federal and state tax returns, for the 1999 to 2005 period, which Plaintiffs filed.

19.    Defendant did not at any time have any conversation or discussion with Hayden (Adrianne or Sundy), concerning the subject matter of this complaint, in 1999 or at any time. Defendant and Hayden's conversations have always been very limited. Defendant's relationship

with Hayden  generally lacked characteristics of parental devotion, filial piety or bonds normally or often associated with mother daughter relationships and  was not one,  based upon trust, confidence or  affection, since Defendant's early childhood.

20.. Defendant was not  privy to any understanding or agreement between Plaintiffs, jointly or severally concerning their joint assets or resources, except that they would  retain their respective  separate accounts and  Solomon would continue to be responsible for paying the majority of  Plaintiff's household costs and expenses, from Solomon's SSI and pension monthly income, which was deposited to his Bank of America Checking account.

21.  Defendant did not close, change, conspire to change, induce  or  transfer any asset,  resource or account held by Plaintiffs  jointly or separately,  to herself or to her control without the express direction, and approval of  Solomon.

22. Defendant did not imply,  make  any promise or representation to Plaintiffs that she would act as their "trustee," or that she was qualified in any way to be Plaintiff's "investment manager," with respect to their discretionary funds or assets.

23. Solomon  knowingly, intentionally and  voluntarily made, directed  and authorized such  transfers and the substantial money given  to Defendant, beginning  in late  1990's to 2003, that are the subject matter of this complaint.

24. Defendant did not make any false or untrue representations or promises to Plaintiffs concerning investment or management of any asset or funds. Defendant did not engage in fraudulent or secretive acts of any kind with respect to  Plaintiff's assets or funds.

25. Defendant  did  not engage in any  Fraud, Secrecy  or Failure to Disclose, with respect to  Plaintiffs, assets or funds   Defendant did not have a duty  to discuss  with Hayden or others of her choice, what Solomon did or did  not do via whatever means, with his separately  held assets and accounts, when Solomon  refused to adhere to Hayden's inquiries and demands.

26. Statements of Account, Returns, Advice or confirmations required, necessary, respecting any statement, account, expenditure, allocation, gift, transfer or use of Solomon's assets or funds were received from Defendant and were available  from "Third" parties, which were reviewed and approved by Solomon contemporaneous with any and all expenditures, allocations, transfers, gifts or use of said asset or funds.

27.    Defendant did not exert undue influence or trickery, over Plaintiffs. Although, Defendant is said to have a "strong" personality, she is particularly disinclined to assert her will over others. Additionally, throughout all times mentioned, the parties have lived in Hampton, Va and New York, NY, respectively (more than 500 miles away), and Hayden, Adrianne and Sundy's access to Plaintiffs was entirely unhindered, while Defendant's access was not.

28.    Although Solomon's spouse Hayden may not have had the same information Solomon had concerning his account matters, or his conversations with Defendant, it cannot be said that information was secreted, by the Defendant; or that Defendant, did anything respecting same without Solomon's express knowledge and authorization. Throughout all periods mentioned , Solomon and Phroska had ongoing contact, discussions, correspondence and numerous communications with each other, that did not include Hayden Solomon also, had direct control and access to information from third parties, including but not limited to his accountant, re all resources and funds held in accounts in his name.

.    29.    During all times mentioned herein, Solomon had the unrestricted right to give his separately held assets to his wife, to any or all of his children or to anyone else; and he voluntarily gave such assets to Defendant, for her own use and benefit, without recourse, under the Domestic Relations Laws of New York and Virginia.

## B.2. DEFENDANT'S PROPOSED CONCLUSIONS OF LAW

**b. Defendant's Legal Contentions**

No Cause of Action

1.    The complaint fails to state a claim against defendant upon which relief can be granted.

**Statute of Limitations**

2.    The right of action set forth in the complaint is barred, in whole or part, by the Statute of Limitations, where the matters alleged, are claimed to have occurred more than Six (6) years ago and more than Three (3) years ago.    Plaintiffs action to impose a Constructive Trust is governed by a Six year Statute of Limitation and Breach of Contract Claim is governed by a Three

year Statute of Limitation. Further, Plaintiff's causes of action for Fraud, Misrepresentation or Breach of a Fiduciary duty, fail to detail circumstances constituting the wrongs as required per 3016B and should also be deemed to have expired, in 1999 and no later than 2005, since information and documents re all transactions concerning Defendant's alleged wrong doing, were readily available and within the possession, power and control of Plaintiffs, several years ago; and the last check, transfer, activity or withdrawal from Solomon's checking account, Resource Management account, or Surrender of the Annuity Contract occurred in 2005, . NYS Cplr § 213 & 206

**Collateral Estoppel and Laches**

3.      The right of action as set forth in this complaint is barred, in whole or part, by Collateral Estoppel and Laches. Solomon's current ability to explain and reconfirm his earlier actions, authorizations, knowledge and intentions, to testify on his own and on Defendant's behalf; or to act independently in any way, without fear of abuse and reprisal, from Hayden, Adrianne and Sundy, has degraded and has been intentionally and severely compromised in the years, since 1999 and 2003, by Hayden, Adrianne and Sundy's misconduct, all to Defendant's prejudice.

**No Constructive Trust**

4.      No promise or constructive trust upon Defendant to Hayden can be inferred by reliance upon Hayden's alleged confidential relationship or blood ties with Defendant, nor upon Hayden's alleged conversations or discussions, Defendant was not privy to, that Hayden claims she had with Solomon or third parties, after the fact.

5.      No trust can be found where Defendant did not express, imply or make any representation to Plaintiff's, jointly or separately, nor to anyone, that Defendant would invest their assets or funds, or that Defendant was in any way versed in investment matters.

6.      The attorney client "fiduciary trust " relationship Defendant had with Plaintiff's, jointly re their 1988 house sale and purchase **Closings**, is remote in time and cannot be construed as evidence of an continuing attorney client trust relationship, between Defendant and Plaintiffs.

(Sharp v Kosmalski, 40 NY2d 119, 121; see Simonds v Simonds, 45 NY2d 233, 241-242; Weiss v Weiss, 186 AD2d 247, 249; cf. Modica v Modica, 15 AD3d 635; Cerabono v Price, 7 AD3d 479, 480; Levy v Moran, 270 AD2d 314, 315; Ostreicher v Ostreicher, 238 AD2d 392, 393).

Sharp v Kosmalski, 40 NY2d 119, 121).

**No Breach of  Trust or Fiduciary Duty**

7.    Defendant did not have  a  fiduciary duty to Hayden , as an attorney,  attorney in a fact and/or trustee,  by virtue of any  relationship Defendant had with Solomon, especially where it is evident that  Defendant 's relationship,  role and dealings, with Solomon, in virtually all matters did  not  include  Hayden.

**No Conversion**

8.    Defendant did not exercise  unauthorized     possession, ownership or control of Plaintiff's  jointly held  assets.

9.    Defendant did not exercise  possession, ownership and control of  Solomon Leake's separately held assets and banking accounts, without Solomon's express  consent, approval and knowing authorization.  The Paine Webber Resource Management, Hartford Annuity and Bank of America Checking accounts, established in Solomon's own name, as referenced herein,   all named  Defendant on said accounts (as a  "joint/dual  signatory,"   annuitant, beneficiary,  co owner) or in  a capacity that did not require Defendant to exercise the General Obligations Law Power of Attorney, for access to said accounts.

Vigilant Ins. Co. of Am. v. Hous. Auth., 87 N.Y.2d 36, 44 (Auth., 87 N.Y.2d 36, 44 (1995) Yeterian v. Heather Mills N.V. Inc., 183 AD2d 493, 494 [1st Dep't 1992]).

10.    New York and  Virginia  **are not**  marital "Community Property" states  and they are  both historically   "Title States."    Thus,  Plaintiff, Solomon Leake during all the times mentioned  herein, had  the unrestricted right to give  his separately held and individually entitled assets to his wife,  to any  or all of  his children or to anyone else, without  Hayden's knowledge, consent and authorization.

11.     Solomon Leake  did  not  lose  that  right,   because  he may now be incapacitated,  or  because  of   "future,"   "marital" or "elective"  interests  or shares, his wife, might  be entitled to claim,   under the  laws of   Mental Hygiene;   EPTL or  Domestic Relations Law  New York or Virginia.

**No Fraud**

12     Defendant did not  make any  false or untrue representations  or promises  to Plaintiff's concerning the investment or management of  assets or funds, at any time.  Defendant did not  engage in fraudulent or secretive acts of any kind with respect to Solomon's  assets  or funds.  Solomon  had  complete  access and information concerning any  and all   assets and accounts, from  third parties, during  all  times mentioned .   Hayden filed joint tax returns with Solomon for 1999 and 2000 period, where account information was duly listed.    Partners v 150 Grand, 305 AD2d 527, 759 NYS2d 347 (Fleming v  Ponziani, 24 NY2d 105,299 NYS2d 134; Whitehead v Town House Equities, 8 AD3d 367,780

**No Unjust Enrichment**

13     Defendant, daughter  was not unjustly enriched nor  received  any asset or benefit that she was  not  voluntarily and  intentionally given,  by her father, Solomon, in his attempt to make amends.

**Account  Statements**

14.     Any and all Statements of Account or  Returns,  required, or  necessary, respecting any statement, account, expenditure, allocation,  gift, transfer or use of  Solomon Leake's assets or funds was  received  from Defendant and was available to     Plaintiff's  from  "Third" party, reputable  institutions, (ie., Hartford Life, Bank of America, UBS Paine Webber) and   were reviewed  and approved by  Solomon Leake, contemporaneous  with any and all  expenditures, allocations,  transfers, gifts or use of said  asset or funds.

## V. ISSUES TO BE TRIED

      1.      Whether in or about late 1998 and early 1999 there was a relationship of trust and confidence between each of the plaintiffs, or either of them, and the defendant.

      2.      Whether in or about late 1998 and early 1999, defendant represented to and promised plaintiffs, or either of them, that if they would transfer their financial assets into her control, she would act as trustee of said assets, place them in a better performing investment and use the principal and income thereof for plaintiffs' benefit.

      3.      Whether the transfer of the Franklin Templeton Account and the Nuveen Account from joint ownership by both plaintiffs into sole ownership by plaintiff Solomon Leake was induced by defendant's representation to plaintiffs that defendant would put the funds in a better performing investment and manage and use the funds for their benefit.

      4.      Whether any of the assets in issue were a gift from plaintiff Solomon Leake to defendant.

      5.      Whether plaintiff Hayden Leake demanded that defendant account for her administration of the assets.

      6.      Whether a demand was made on behalf of plaintiff Solomon Leake that defendant account to plaintiffs for her administration of the assets.

      7.      Whether the right of action set forth in the complaint is barred, in whole or part, by the Statute of Limitations, where  the matters  alleged,   are claimed to have occurred more than   Six (6) years ago and more than Three (3) years ago.

      **8.**      Whether Defendant may  be held  accountable or indebted to Hayden, separately upon  a "derivative," "representative,"  " marital  property" claim or cause of action,  or upon a  "constructive trust" theory, with respect  to  any asset  or funds  held in Plaintiff Solomon Leake's name alone.

      9.      Whether the substantial  gifts, transfers, and withdrawals that  Defendant  admits  receiving  from her father, and her father's accounts,   were intentionally and voluntarily made,  directed and authorized  by Solomon.

    .

## VI. PLAINTIFFS' EXHIBITS

(Each of the following Exhibits will be identified as "PX" followed by the numbers set forth below.)

1.      Letter dated May 9, 2004 from plaintiff Hayden Leake to "Dear Children", stamped 00375 through 00377.

2.      Letter dated May 29, 2004 from defendant to plaintiff Hayden Leake, stamped 00378 through 00379.

3.      Undated letter and attachment from plaintiff Hayden Leake to Departmental Disciplinary Committee, stamped 00382 through 00385.

4.      Undated "Complaint" to Departmental Disciplinary Committee signed by plaintiff Hayden Leake, stamped 00386.

5.      Letter from Departmental Disciplinary Committee to Hayden M. Leake with attached answer of defendant to complaint, stamped 00387 through 00390.

6.      Letter dated December 5, 2004 from plaintiff Hayden Leake to Departmental Disciplinary Committee, stamped 00391 and 00392.

7.      Letter dated January 8, 1999 from UBS PaineWebber to Phroska Leake McAlister Esq. and Solomon Leake with New Account Form, stamped A00039 and A00040.

8.      Account Application signed by plaintiff Solomon Leake and others, stamped A0002 and A0003.

9.      General Power of Attorney executed by plaintiff Solomon Leake on January 28, 1999, appointing defendant as attorney-in-fact and Damien Leake as substitute or successor, stamped A00005 and A00006.

10.      Affidavit of Agent executed by defendant on February 18, 1999, stamped A00004, related to foregoing Power of Attorney.

11.      Letter from Franklin Templeton Investments to plaintiff's counsel with enclosed Year-End Summary Statements of Account Transactions for 1998 and 1999, stamped 815 through 817.

12.      Four pages faxed 02/19/1999 from telephone number (212) 387-9159 including: statement of Franklin Templeton Account dated 11/02/98 stamped A000015;

-27-

transmittal letter signed by plaintiff Solomon Leake to Merrill Lynch Pierce Fenner & Smith dated January 28, 1999, stamped A00018; Signature Guaranteed Letter of Instruction stamped A000019, signed by both plaintiffs authorizing transfer of Franklin Templeton Account as indicated on attached form; Cash/Securities Multi-Purpose Form stamped A00020, signed by both plaintiffs with signature guaranteed, directing that "All shs" be transferred to Account Name: Solomon Leake.

13.    UBS PaineWebber Account Transfer Form TF bearing guaranteed signature of plaintiff Solomon Leake, dated 1/30/99, to transfer Franklin Templeton Account from Merrill Lynch to UBS PaineWebber, stamped A00011.

14.    Statement of Franklin Templeton Account dated 03/08/99, stamped A00009.

15.    Statement of Franklin Templeton Account dated 05/21/99, stamped A00009.

16.    Nuveen Mutual Fund Confirmation of plaintiffs' joint account dated October 19, 1998, stamped 000818-000819.

17.    1998 Tax Reporting Statement from National Financial Services Corporation to plaintiffs concerning Nuveen Account, stamped 000010-000011.

18.    Fax Cover Page from defendant to Ann Lemon faxed 04/08/1999, stamped A00089, with attached statement of Nuveen Account for March 1, 1999 through March 31, 1999, stamped A00023 through A00026.

19.    UBS PaineWebber Account Transfer Form TF bearing guaranteed signature of plaintiff Solomon Leake dated 1/30/99 to transfer the Nuveen Account from NationsBanc Investments Inc. to UBS PaineWebber, stamped A00022.

20.    Monthly statements of UBS PaineWebber Account from May 1999 through August 2007, inclusive.

21.    Six-page fax from Ann Lemon of Paine Webber to Marie Robinson consisting of Facsimile Cover Sheet, stamped 000252; Application for Annuity Contract, stamped 000253, Definitions of Replacement form, stamped 000254; Affidavit of Agent, stamped 000251; General Power of Attorney, stamped 000249 and 000250.

22.    Cover letter dated June 21, 1999 from Ann Lemon addressed to defendant and plaintiff Solomon Leake, stamped A000061, and attached Annuity Contract, stamped A000062 through A00082, inclusive.

23.     Letter dated December 20, 1999 from defendant to "Kim" at UBS PaineWebber instructing her to transfer $2,500 from the UBS PaineWebber Account to plaintiff Solomon Leake's Nations Bank Checking Account, stamped A00090, with attached Outgoing Wire Inquiry stamped A00091.

24.     Letter dated June 22, 2000 from defendant to Ann Lemon at UBS PaineWebber directing her to pay $3,500 from the UBS PaineWebber Account, stamped A00098, with attached Check Detail Inquiry stamped A00099 and Account Inquiry stamped A00100.

25.     Letter dated August 09, 2000 from defendant to Ann Lemon at UBS PaineWebber directing her to pay out or transfer from the UBS PaineWebber Account $5,000 to defendant's Amalgamated Bank account and $12,000 to her Chase Manhattan Bank Account, stamped A00095, with attached Outgoing Wire Inquiries and Account Inquiries, stamped A00054, A00055, A00096, and A00097.

26.     Letter dated May 09, 2001 from defendant to Ann Lemon at UBS PaineWebber directing her to transfer $6,500 from the UBS PaineWebber Account to her Amalgamated Bank account, stamped A00101.

27.     Letter dated June 7, 2002 from defendant to "Genevieve," Assistant to Ann Lemon at UBS PaineWebber, directing her to transfer from the UBS PaineWebber Account $7,500 to defendant's Chase Manhattan Bank Attorney IOLA account, stamped A00052.

28.     Letter dated March 13, 2003 from defendant to Hartford Life, stamped 000235, with attached two Surrender Request Forms, stamped 000238, 000237, 000236, 000239, 000242, 000240, and 000241.

29.     Letter dated December 30, 2003 from defendant to Hartford Life, stamped 000233, with attached Surrender Request Form, stamped 000233, 000232, 000231, 000230 and 000229.

30.     Letter dated August 1, 2005 from Internal Revenue Service to plaintiff Solomon Leake, stamped 000327, 000328, 000329, 000330, 000331, 000332, 000333, 000334 and 000335.

31.     UBS PaineWebber Confirmations stamped A000106 through A000137, inclusive.

32.     Five UBS PaineWebber Confirmations previously marked collectively as Plaintiff's Exhibit 12 for identification on 3/25/08.

33.    Bank of America Signature Card for Account Number 000082294766 stamped 000440.

34.    Statements of Bank of America Account for 12-18-03 through 09-19-06, inclusive.

35.    Check No. 3352 drawn on Bank of America Account, payable to Virginia Department of Taxation in the amount of $570.00, stamped 000656.

36.    Check No. 3356 drawn on Bank of America Account, payable to Aaron Reynolds in the amount of $250.00, stamped 000777.

37.    Check No. 3357 drawn on Bank of America Account, payable to defendant in the amount of $3,500, stamped 000776.

38.    Check No. 3358 drawn on Bank of America Account, payable to Labarbara Pugh in the amount of $500, stamped 000778.

39.    Bank of America Signature Card for Account Number 000082294766 signed by plaintiff Solomon Leake and Sundy L. Leake, dated December 19, 2005.

40.    Group of documents marked 101 Def through 126 Def concerning *inter alia* electronic payments made by defendant.

41.    U.S. and Virginia income tax returns of Solomon Leake for 2003.

42.    Form 1099-R from Hartford Life for 2003 addressed to Solomon Leake.

43.    Nuveen Consolidated Account Statements of Account Number 0000089002330 for 1999 and 1998 stamped 000820 through 000825.

44.    NationsBanc Investments (and Banc of America Investment Services) monthly statements and 1999 Tax Reporting Statement for plaintiffs' joint Account No. W26-787892 from November 1, 1998 through June 30, 1999, stamped 000829 through 000850.

45.    NationsBanc Investments (and Banc of America Investment Services) monthly statements and 1999 Tax Reporting Statement for Account No. W26-015202 in the name of Solomon Leake from November 1, 1998 through June 30, 1999, stamped 000851 through 000897.

## VII  DEFENDANT'S  EXHIBITS

( Exhibits that may be offered by DEFENDANT,  to  be identified as "PX" followed or identified by the numbers set forth below.)

1.      Letter dated May 9, 2004 from plaintiff Hayden Leake to "Dear Children", stamped 00375 through 00377.

2.      Letter dated May 29, 2004 from defendant to plaintiff Hayden Leake, stamped 00378 through 00379.

3.      Undated letter and attachment from plaintiff Hayden Leake to Departmental Disciplinary Committee, stamped 00382 through 00385.

4.      Undated "Complaint" to Departmental Disciplinary Committee signed by plaintiff Hayden Leake, stamped 00386.

5.      Letter from Departmental Disciplinary Committee to Hayden M. Leake with attached answer of defendant to complaint, stamped 00387 through 00390.

6.      Letter dated December 5, 2004 from plaintiff Hayden Leake to Departmental Disciplinary Committee, stamped 00391 and 00392.

7.      Letter dated January 8, 1999 from UBS PaineWebber to Phroska Leake McAlister Esq. and Solomon Leake with New Account Form, stamped A00039 and A00040.

8.      General Power of Attorney executed by plaintiff Solomon Leake on January 28, 1999, appointing defendant as attorney-in-fact and Damien Leake as substitute or successor, stamped A00005 and A00006.

9.      Affidavit of Agent executed by defendant on February 18, 1999, stamped A00004, related to foregoing Power of Attorney.

10.      Letter from Franklin Templeton Investments to plaintiff's counsel with enclosed Year-End Summary Statements of Account Transactions for 1998 and 1999, stamped 815 through 817.

11.      Four pages faxed 02/19/1999 from telephone number (212) 387-9159 including: statement of Franklin Templeton Account dated 11/02/98 stamped A000015; transmittal letter signed by plaintiff Solomon Leake to Merrill Lynch Pierce Fenner & Smith dated January 28, 1999, stamped A00018; Signature Guaranteed Letter of Instruction stamped

A000019, signed by both plaintiffs authorizing transfer of Franklin Templeton Account as indicated on attached form; Cash/Securities Multi-Purpose Form stamped A00020, signed by both plaintiffs with signature guaranteed, directing that "All shs" be transferred to Account Name: Solomon Leake.

## DEFENDANT 'S  EXHIBITS TO  BE  IDENTIFIED AS "DX" DESCRIBED & IDENTIFIED AS INDICATED  BELOW.

### DESCRIPTION

DX          1990  POWER OF ATTY  (SOLOMON TO PHROSKA)

DX          1990  LIVING WILL & PROXY

PX          1999  POWER  OF ATTY  (SOLOMON TO PHROSKA  W/ DAMIEN)

DX          1999 Joint TAX RETURNS W/  SUPPORTING DOCS PREPARED BY CPA A. REYNOLDS  FILED BY PLAINTIFFS

DX          2000   Joint TAX RETURNS

DX          2003  TAX RETURNS

DX          2004  TAX RETURNS

DX          2005  TAX RETURNS

            LETTER FROM  A. REYNOLDS, CPA TO IRS RE 2005 TAX RETURNS

DX          UBS/PAINE WEBBER RESOURCE BOILER PLATE PACKAGE DOCS

PX#          REPRESENTATIVE  HARTFORD LIFE  ADVICES   ADDRESSED TO SOLOMON AT HOME ADDRESS IN VIRGINIA

DX          MISCELLANEOUS  POSTMARKED BROWN ENVELOPES ADDRESSED TO  PHROSKA FROM SOLOMON

DX           LETTER / W  ENVELOPE  FROM  SOLOMON TO PHROSKA

PX          PETITION &  LETTER TO  NYS DISCIPLINARY COMMITTEE FROM
            HAYDEN RE HER     DISMISSED COMPLAINT


DX # 101 - 137          REPRESENTATIVE  ONLINE  BANK  STATEMENTS &
                         INFORMATION

            REPRESENTATIVE  ONLINE   STATEMENTS   RE  TRAVEL
            ARRANGEMENTS FOR SOLOMON & PHROSKA

            REPRESENTATIVE  ONLINE  INFO RE  PLAINTIFF'S  HH UTILITIES,
TAXES

            MISCELLANEOUS EMAIL CORRESPONDENCE BETWEEN   SIBLINGS

## VIII. STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

It is hereby stipulated that all of Plaintiff's Exhibits listed above are authentic and admissible in evidence.

Defendant objects to the introduction by plaintiffs of her deposition testimony because defendant is available to testify.

Plaintiff objects to the use, authenticity and admissibility of all defendant's exhibits listed above other than those included in plaintiff's exhibits because they have not been produced to plaintiffs' counsel.

## IX. PLAINTIFF'S WITNESS LIST

The witnesses listed below may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown.

Plaintiff, Solomon Leake

Plaintiff, Hayden Mae Leake

Sundy L. Leake

Adrianne Leake-Gaylord

Paul Gaylord

Ann J. Lemon (formerly of UBS)

Jorge Arias (UBS)

Luisa H. Harvey (Bank of America, Coliseum-Riverdale Branch)

Shelby N. Estrada (Bank of America, Coliseum-Riverdale Branch)

Erin Voska (Bank of America, Coliseum-Riverdale Branch)

The testimony of defendant, Phroska Leake McAlister, will be offered by offering the following portions of the transcript of her deposition testimony:

P29, L8 through P30, L20

P36, L3-8

P36, L19-25

P37, L13 through P41, L19

P67, L5 through P69, L10

P71, L14 through P73, L10

P86, L25 through P88, L5

P92, L13-17

P93, L8 through P95, L15
P95, L17-21

P97, L23 through P99, L15

P100, L6 through PP105, L24

P107, L4 through P108, L6

P111, L22 through P117, L3

P117, L11 through P123L9

P137, L8 through P139, L13

P142, L4 through P143, L4

P143, L5 through P146, L7

P147, L19 through P150, L14

P157, L23 through P159L15

P191, L15 through P192, L6

P193, L9 through P194, L5

P196, L7 through P198, L3

P210, L19 through P212, L25

P255, L9 through P256, L24

P265, L10 through P278, L24

P301, L3-21

P305, L15 through P309, L20

P318, L13 through P323, L7

P336, L16-20

P338, L97 through P346, L4

## X. <u>DEFENDANT'S WITNESS LIST</u>

The witnesses listed below may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown.

Defendant, Phroska Leake McAlister

Labarbara Crayton Pugh,  (Nevada)

Damien Leake (California)

Laura McLarty (NY)

Roderick Reives (NY)

Aaron Reynolds, C.P.A.  NY NY

Errol James ( NY)

"Chic" Day (Virginia)

Charles Nelson (New Jersey)

Clarice Turner (Virginia & New York)

## XI. RELIEF SOUGHT

RELIEF SOUGHT BY PLAINTIFFS:

### FIRST CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
### (TRUST ACCOUNTING)

1.       An order directing defendant to account as trustee to plaintiffs for her administration of the assets that were formerly in plaintiffs' Franklin Templeton Account.

2.       An order directing defendant to account as trustee to plaintiffs for her administration of the assets that were formerly in plaintiffs' Nuveen Account.

3.       An order directing defendant as trustee to account to plaintiff Solomon Leake as trustee with respect to his Bank of America Checking Account.

### SECOND CLAIM FOR RELIEF, BY PLAINTIFF SOLOMON LEAKE
### (ACCOUNTING BY ATTORNEY-IN-FACT)

4.       An order directing defendant to account to plaintiff Solomon Leake for her acts as his attorney-in-fact with respect to the assets that were placed in the UBS PaineWebber Account and the Hartford Annuity Contract.

### THIRD CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
### (BREACH OF TRUST AND BREACH OF FIDUCIARY DUTY)

5.       A money judgment in favor of the plaintiffs jointly against defendant in the amount of $168,252.10 for breach of fiduciary duty as trustee with respect to the assets that were derived from the Franklin Templeton Account.

6.       A money judgment in favor of plaintiff Solomon Leake, individually, in the amount of $76,563.95 for breach of fiduciary duty as trustee with respect to the assets that were derived from the Nuveen Account.

7.       A money judgment in the amount of $3,351 in favor of plaintiff Solomon Leake for defendant's breach of her fiduciary duty as trustee in causing him additional 2003 income tax and interest thereon.

8.       In the alternative, a money judgment in favor of plaintiff Solomon Leake against defendant in the amount of $248,167.05 for breach of fiduciary duty as attorney-in-fact with respect to the assets placed in the UBS PaineWebber Account, plus interest from May 24, 1999.

9.    A money judgment in favor of plaintiff Solomon Leake against defendant in the amount of $10,500 for monies paid by her to herself and Labarbara Pugh, plus interest.

## FOURTH CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
### (CONVERSION)

10.    A money judgment in favor of the plaintiffs jointly and severally against defendant in the amount of $148,837.53 for conversion of the assets removed by her from the UBS PaineWebber Account, plus interest thereon from May 24, 1999.

11.    A money judgment in favor of plaintiff Solomon Leake, individually, against defendant in the amount of $10,500 for conversion of funds from his Bank of America Checking Account, plus interest thereon from January 11, 2006.

## FIFTH CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
### (FRAUD)

12.    A money judgment in favor of the plaintiffs jointly and severally against defendant in the amount of $168,252.10 as damages for fraud with respect to the assets derived from the Franklin Templeton Account.

13.    A money judgment in favor of plaintiffs jointly and severally against defendant in the amount of $76,563.95 for fraud with respect to the assets derived from the Nuveen Account, plus interest thereon from June 14, 1999.

14.    A money judgment in favor of plaintiff Solomon Leake against defendant in the amount of $3,351 for fraud in causing him additional 2003 income tax and interest thereon.

15.    A money judgment in favor of plaintiff Solomon Leake, individually, against defendant in the amount of $10,500 for funds taken by her from his Bank of America Checking Account.

## SIXTH CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
### (CONSTRUCTIVE TRUST AND UNJUST ENRICHMENT)

16.    The imposition of a constructive trust upon any assets obtained by defendant from plaintiffs or either of them and still remaining in the hands or under the control of defendant, and any assets obtained by defendant in exchange for those assets.

**RELIEF SOUGHT BY DEFENDANT**

        DEFENDANT, requests judgment against Plaintiffs granting dismissal of the complaint in all respects and for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
                , 2008


               _____
                              U.S.D.J.


McGARRY & SIMON


By:_____        _____
     William A. Simon (WS-4604)      PHROSKA L. McALISTER, ESQ.
Attorneys for Plaintiffs             Pro Se Attorney for Defendant
317 Madison Avenue, Suite 1511    116 West 23rd Street, 5th Floor #197
New York, New York 10017         New York, New York 10011
Telephone No. (212) 867-0100     Telephone No. (212) 475-7085
Facsimile No. (212) 867-3243