UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SOLOMON LEAKE and
HAYDEN MAE LEAKE,                             PLAINTIFFS' STATEMENT OF
                                              THE ELEMENTS OF EACH CLAIM
                      Plaintiffs,        AND SUPPORTING FACTS

              -against-                    07 Civ. 2947 (CM)

PHROSKA LEAKE McALISTER,                      ECF CASE

                      Defendant.
-------------------------------------------------------x

Preliminary Statement

       This is an action by plaintiffs, Solomon Leake and Hayden Mae Leake, against their daughter, defendant Phroska Leake McAlister, seeking an accounting, damages for breach of trust, and the imposition of a constructive trust, for defendant's misappropriation of assets from three separate accounts which they entrusted to her control.

       In December of 1998 and January of 1999, both plaintiffs were over 80 years of age and Solomon Leake was having neurological and other health problems. They discussed their joint investments with the defendant, who had previously served as the attorney for the sale of their house in the Bronx and the purchase of their house in Hampton, Virginia, and had been designated as attorney-in-fact and health care proxy for plaintiff Solomon Leake for many years. Defendant represented to plaintiffs that she would put their joint investment assets in a "better performing account" and manage the investments for their benefit.

       Defendant opened an account at the Manhattan office of PaineWebber, which later merged with UBS. Although this account (the "UBS PaineWebberAccount") was in the

name of Solomon Leake, it was the defendant, acting under a Power of Attorney executed by him, who made all of the transactions.

Plaintiffs jointly owned an account containing shares of Franklin New York Tax-Free Income Fund - Class I valued at $111,580.41 (the "Franklin Templeton Account,") and an account at NationsBanc Investments containing shares of Nuveen Flagship Virginia Municipal Bond Fund Class A valued at $53,206.36 (the "Nuveen Account"). To effectuate the plan to have defendant manage their investments, plaintiffs first transferred these joint accounts into parallel new accounts in the sole name of plaintiff Solomon Leake. Then plaintiff Solomon Leake, assisted by defendant, transferred the mutual fund shares held in both accounts into the UBS PaineWebber Account. Defendant then liquidated the mutual fund shares.

In June of 1999 defendant used $75,000 from the UBSPaineWebber Account to purchase an annuity contract from Hartford Life Insurance Co. (the "Hartford Annuity Contract"), naming Solomon Leake as "Owner" and "Participant" and herself as "Annuitant".

On December 31, 2003 defendant surrendered the Hartford Annuity Contract, receiving a payment of $89,487.53. Plaintiff Solomon Leake received nothing from that contract, but was charged with taxable income of $37,132.66 on its liquidation, on which he was required to pay $3,351 in federal income taxes in 2003.

In addition to using $75,000 to buy the Hartford Annuity Contract for herself, defendant made other transfers from the UBS PaineWebber Account to herself of $59,225 , incurring transfer fees of $125. As of October 31, 2003 only $2,077.59 remained in the UBS PaineWebber Account.

In January of 2004, while plaintiff Solomon Leake was having a crisis in his neurological condition, he retitled his Bank of America checking account (the "Bank of America Checking Account") in the joint names of himself and the defendant. His intention in making this transfer was not to confer any beneficial ownership of the account upon defendant, but as a matter of convenience, to enable defendant to help him pay his bills. For the next two years defendant did help him pay his bills, chiefly by electronic payments; however, toward the end of that period she made payments to herself totaling $10,000 and a payment to her half-sister of $500 from the account.

All together, defendant directly misappropriated at least $159,337.53 of plaintiffs' funds, and also deprived them of the income they would have received on those funds.

**STATEMENT OF THE ELEMENTS OF EACH CLAIM AND SUPPORTING FACTS**

Plaintiffs make the following statement of the elements of each of their claims and the facts they rely upon to establish each element:

**FIRST CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
(TRUST ACCOUNTING)**

1. The four essential elements necessary for the creation of a trust are: (1) a designated beneficiary; (2) a designated trustee; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) actual delivery or legal assignment of property to the trustee, with intention of passing legal title to such property to the trustee. *Brown v. Spohr,* 180 N.Y. 201, 209, 73 N.E. 14. No formulaic expression is required to create a trust; not even the words "trust" and "trustee" are mandatory. *See Matter of Leonard*, 218 N.Y. 513, 520, 113 N.E. 491; *Matter of Donohue,* 143 N.Y.S.2d 405, 405-406.

2. <u>The plaintiffs were the designated beneficiaries</u>, as shown by the following facts: They had been married and living together for over fifty years, and collectively had six adult children. They entrusted to defendant their joint Franklin Templeton and Nuveen Accounts, which together represented nearly all of their liquid assets. They made these transfers in reliance on defendant's representation to them that she would put the assets in a "better performing account" and use them for their benefit. They had no reason to transfer the bulk of their savings to the defendant, who was only one of their collective six children, except to have her manage the assets for them. Defendant as trustee made four payments to Solomon Leake or for his benefit totaling $11,852.

3. <u>The defendant was the designated trustee</u>, as shown by the foregoing facts: Although the UBS PaineWebber Account was in the name of Solomon Leake, defendant as his attorney-in-fact made all of the transactions in the account; met, spoke and corresponded with the UBSPaineWebber account representative; arranged for all of the transactions that were made in the account and all of the payments that were made from it, and received all of the account statements.

4. <u>The designated assets</u> were the plaintiffs' jointly held Franklin Templeton and Nuveen Accounts. They were placed in a designated account, the UBSPaineWebber Account, part of which was used to purchase the Hartford Life Annuity. All are distinct and identifiable assets.

5. <u>The assets were transferred to defendant</u>. First, the joint Franklin Templeton and Nuveen Accounts were transferred into new accounts in the sole name of plaintiff Solomon Leake. This constituted a transfer of legal ownership by Hayden Leake. Solomon Leake intended to transfer legal title to the defendant. However, the defendant instead

decided to open the UBSPaineWebber Account in the name of Solomon Leake. Nevertheless, she controlled the account absolutely through a power of attorney, communicated directly with the UBSPaineWebber account executive, and made all transactions in the account. All account statements were mailed to her.

   6.  Even absent an express trust, if there is entrustment of assets the court has the power to direct an accounting. *See Matter of Kent,* 188 Misc.2d 509, 510, 729 N.Y.S.2d 352 (2001). The court "possesses the jurisdiction to order an accounting when four factors exist: (1) a fiduciary relationship, (2) entrustment of money or property, (3) no other remedy, and (4) a demand and refusal of an accounting." *Matter of Kent, supra*. *See also Matter of Mary XX*, 33 A.D.3d 1066, 822 N.Y.S.2d 659 (3rd Dep't 2006); *300 Broadway Realty Corp. v. Kommit,* 37 Misc.2d 325, 235 N.Y.S.2d 205 (1962 ).

   7.  <u>There was a fiduciary relationship</u> of long standing between plaintiffs and defendant. Defendant was plaintiffs' eldest daughter; had been an intermediary in resolving conflicts between them, had represented them as attorney in the sale of their former home and purchase of their new home, and had for many years been named on Solomon Leake's powers of attorney and health care proxy.

   8.  <u>There was an entrustment</u> to the defendant of the Franklin Templeton and Nuveen Accounts.

   9.  <u>Plaintiffs have no adequate remedy</u> other than an accounting. Accounting is superior to other relief that could be afforded to the plaintiffs because it will enable them to learn in detail what was done with their assets and to compel the defendant to provide all relevant information. Moreover, an accounting will provide a remedy not only for defendant's

misappropriation of the funds, but also for the losses that were sustained and profits and income that they should have realized on the entrusted assets.

10. <u>Plaintiffs have demanded that defendant render an account of her actions as trustee of the foregoing assets, and defendant has refused to provide it.</u> Hayden Leake sent a letter dated May 9, 2004 to all of her children stating that a few years previously plaintiffs had turned over assets to defendant and that she wanted to know "where the money went." Defendant replied with a letter dated May 29, 2004 in which she referred to her mother's letter as a demand that she (defendant) be held "accountable". Thereafter, Hayden Leake filed a grievance with the Departmental Disciplinary Committee of the First Department, including a letter written by her daughter Adrianne Leake stating that Hayden Leake had asked the defendant several times about the money and defendant had replied that she did not want to discuss it. She requested an "investigation and remedy." Also enclosed was a handwritten complaint from Hayden Leake stating that she had asked defendant both in letters and orally for information but that defendant had refused to provide it. In a further letter to the Disciplinary Committee dated December 5, 2004, Hayden Leake stated: "I want an accounting of where and how the money was managed."

### SECOND CLAIM FOR RELIEF, BY PLAINTIFF SOLOMON LEAKE
### (ACCOUNTING BY ATTORNEY-IN-FACT)

11. Defendant opened the UBSPaineWebber Account in the name of Solomon Leake and controlled it as his attorney-in-fact under a power of attorney which he signed on February 28, 1999. Plaintiff Solomon Leake has demanded that she account to him for her actions as attorney-in-fact.

12. A power of attorney creates a fiduciary relationship between principal and agent. *Matter of Roth,* 283 A.D.2d 504, 724 N.Y.S.2d 476 (2nd Dept.2001); *Mantella v.*

*Mantella,* 268 A.D.2d 852, 701 N.Y.S.2d 715 (3rd Dept.2000); *Guardianship of Kent,* 188 Misc.2d 509, 729 N.Y.S.2d 352 (Sup. Ct., Dutchess Co. 2001 ). The attorney-in-fact has a duty to act with the utmost good faith in accordance with the principles of moral fidelity, loyalty and fair dealing. *Semmler v. Naples,* 166 A.D.2d 751, 563 N.Y.S.2d 116 (3rd Dept.1990), *app. dism'd,* 77 N.Y.2d 936, 569 N.Y.S.2d 607, 572 N.E.2d 48 (1991 ). That duty includes accounting for all of the withdrawals made from the principal's accounts. *Guardianship of Kent, supra*; *Matter of Gershenoff,* 2 Misc.3d 847, 774 N.Y.S.2d 644 (2003), *affd.*17 A.D.3d 243, 793 N.Y.S.2d 397 (1st Dept. 2005); *Matter of Shea,* N.Y.L.J., June 3, 2003, at 20, col. 2. The duty is absolute. *Matter of Steinberg,* 153 Misc. 339, 274 N.Y.S. 914 (1934); *Matter of Garson,* 2 Misc.3d, 774 N.Y.S.2d 644 (Sup. Ct. N.Y. Co. 2003), *aff'd* 17 A.D.3d 243, 793 N.Y.S.2d 397 (1st Dept. 2005).

        13.    Because an attorney-in-fact is a fiduciary, the elements that must be established to compel an account by an attorney-in-fact are the same as those set forth in paragraph 6 *supra.* The facts establishing those elements are the same as those set forth in paragraphs 7 through 10, *supra*.

### THIRD CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
### (BREACH OF TRUST AND BREACH OF FIDUCIARY DUTY)

        14.    To establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant and damages that were directly caused by defendant's misconduct. *Kurtzman v. Bergstol,* 40 A.D.3d 588, 590, 835 N.Y.S.2d 644 (2d Dept. 2007).

        15.    Defendant without question had a fiduciary relationship with both plaintiffs as trustee of the funds they entrusted to her, and a fiduciary relationship with Solomon

Leake as his attorney-in-fact. *See In re Mueller* 19 Misc.3d 536, 853 N.Y.S.2d 245 (Surr. Ct. Westchester Co. 2008).

16. Defendant, by paying out $158,837.53 to herself and $500 to her half-sister from the proceeds of the Franklin Templeton and Nuveen Accounts, was clearly guilty of misconduct.

17. The damages resultant to plaintiffs are plainly evident: the loss of over $159,337.53.

18. Plaintiffs are entitled to the amount of loss sustained, including lost opportunities for profit on the properties by reason of the faithless fiduciary's conduct *E.W. Bruno Company v. Friedberg,* 21 A.D.2d 336, 250 N.Y.S.2d 187; *105 East Second Street Associates v. Bobrow*, 175 A.D.2d 746, 573 N.Y.S.2d 503 (1st Dep't,1991).

19. Defendant is also liable to plaintiff Solomon Leake for breach of her fiduciary duty as his attorney-in-fact in the amount of at least $149,837.53, which she paid to herself from the assets placed in the PaineWebber Account, which she controlled as his attorney-in-fact. *In re Mueller, supra; Matter of Ferrara*, 7 N.Y.3d 244, 852 N.E.2d 138, 819 N.Y.S.2d 215 (2006). A power of attorney is clearly given with the intent that the attorney-in-fact will utilize that power for the benefit of the principal . . .." *Mantella v. Mantella,* 268 A.D.2d 852, 701 N.Y.S. 2d 715 (3d Dep't 2000). The attorney-in-fact "must act in the utmost good faith and undivided loyalty toward the principal, and must act in accordance with the highest principles of morality, fidelity, loyalty and fair dealing . . ." *Semmler v. Naples,* 166 A.D.2d 751, 752, 563 N.Y.S.2d 116 (3d Dep't 1990).

## FOURTH CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
### (CONVERSION)

20. The tort of conversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner. *Payne v. White,* 101 A.D.2d 975, 976, 477 N.Y.S.2d 456; *Peters Griffin Woodward, Inc. v. WCSC, Inc.,* 88 A.D.2d 883, 452 N.Y.S.2d 599. Where the property is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner. *Manufacturers Hanover Trust Co. v. Chemical Bank,* 160 A.D.2d 113, 124-25, 559 N.Y.S.2d 704. The funds of a specific, named bank account are sufficiently identifiable *Payne v. White, supra*; *Republic of Haiti v. Duvalier,* 211 A.D.2d 379, 626 N.Y.S.2d 472 (1st Dep't 1995).

21. The Franklin Templeton and Nuveen Accounts and their proceeds in the hands of defendant are joint property of the plaintiffs. (The transfer of title to these assets from plaintiffs as joint tenants to Solomon Leake individually was part of the process of their transfer to the UBSPaineWebber Account controlled by defendant.) The amounts which defendant paid to herself from the UBSPaineWebber Account and the Hartford Annuity Contract are in her unauthorized possession. These accounts are specifically named and identifiable. Defendant has acted to exclude the owners by refusing to account for and return the assets.

22. Defendant is also liable for conversion in paying out to herself at least $10,000 from Solomon Leake's Bank of America Checking Account while she was one of the signatories on the account. She was made a signatory not to confer a beneficial interest upon her, but as a convenience to her father, so that she could pay some of his bills.

23. While there is a presumption that the parties to a joint account are each entitled to an equal share, it is well settled that the presumption is not conclusive and may be rebutted by evidence showing that the depositor established the account for convenience and not with the intention of conferring a present beneficial interest on the party claiming the half share *Wacikowski v. Wacikowski*, 93 A.D.2d 885, 461 N.Y.S.2d 888, *mot. for lv. to app. den*. 60 N.Y.2d 553, 467 N.Y.S.2d 1027, 454 N.E.2d 941; *Sherman v. Georgopoulos,* 84 A.D.2d 811, 444 N.Y.S.2d 136; *Phillips v. Phillips,* 70 A.D.2d 30, 38, 419 N.Y.S.2d 573; *Filippi v. Filippi,* 53 A.D.2d 658, 384 N.Y.S.2d 1010 .

24. The facts clearly show that Solomon Leake allowed defendant to become joint owner of his Bank of America Checking Account so that she could pay his bills, and not with the intention of giving her a present beneficial interest. She paid numerous bills for him electronically over a nearly two-year period. However, during the last two months of that period she made transfers of $10,000 to herself and $500 to her half-sister.

**FIFTH CLAIM FOR RELIEF, BY BOTH PLAINTIFFS**
**(FRAUD)**

25. In an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury. (*See, Channel Master Corp. v. Aluminium Ltd. Sales,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833; *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 318, 639 N.Y.S.2d 283, 662 N.E.2d 763.

26. The measure of damages for fraud is indemnity for the actual pecuniary loss sustained as the direct result of the wrong (which is known as the "out-of-pocket" rule).

*Reno v. Bull,* 226 N.Y. 546, 553, 124 N.E. 144; *Hanlon v. Macfadden Publ.,* 302 N.Y. 502, 99 N.E.2d 546.

27. Defendant intentionally misrepresented to plaintiffs that she would place the assets from their joint Franklin Templeton and Nuveen Accounts in a better performing account, when in fact she planned to use their proceeds for her own benefit. Thereafter she continued to misrepresent to plaintiffs that she was maintaining the investments for their benefit and failed to disclose to them that she was using them for her own benefit. Her misrepresentations and failures to disclose were made for the purpose of inducing plaintiffs to transfer their investment accounts into the UBSPaineWebber Account, which she controlled, and to fail to demand the funds back from her.

28. Plaintiffs relied upon her misrepresentations and transferred the accounts as she instructed them to, and relied upon her failure to disclose by allowing her to continue controlling the accounts while she was actually using them for her own benefit. Plaintiffs were justified in relying upon her representations and failure to disclose because of the confidential relationship she had with them based on the facts that she was their oldest child, had served as their attorney, and had often been called upon to intercede in conflicts between them.

29. Plaintiffs were damaged by the defendant's payment to herself of $148,837.53 from the UBSPaineWebber Account and the Hartford Annuity Contract.

30. Defendant intentionally misrepresented to plaintiff Solomon Leake that she was using and would continue to use his Bank of America Checking Account to pay his bills. She defrauded him by paying herself $10,000 and her half-sister Labarbara Pugh $500 from the account, and is liable to him individually for those amounts.

### SIXTH CLAIM FOR RELIEF, BY BOTH PLAINTIFFS
### (CONSTRUCTIVE TRUST AND UNJUST ENRICHMENT)

31.     The elements necessary to prove a constructive trust are (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment.  *Sharp v. Kosmalski,* 40 N.Y.2d 119, 386 N.Y.S.2d 72 (1976); *Bankers-Sec. Life Ins. Co. v. Shakerdge,* 49 N.Y.2d 939, 428 N.Y.S.2d 623, *rearg. den.* 50 N.Y.2d 929, 431 N.Y.S.2d 1031 (1980); *Byrd v. Brown,* 208 A.D.2d 582, 617 N.Y.S.2d 192 (2d Dep't 1994); *Ostriker v. Ostriker*, 203 A.D.2d 343, 609 N.Y.S.2d 922 (2d Dep't 1994). However, the four factors are not an "unyielding formula which limits the court's freedom to fashion this equitable remedy" and the requirements are not to be rigidly applied.  *Boutecou v. Goldman*, 103 A.D.2d 732, 733, 477 N.Y.S.2d 192 (2d Dep't 1984).  Rather, "[a] constructive trust will be erected whenever necessary to satisfy the demands of justice."  *Latham v. Father Divine*, 299 N.Y. 22, 26-27 (1949); *Byrd v. Brown, supra*; *Simonds v. Simonds*, 45 N.Y.2d 233, 408 N.Y.S.2d 359 (1978).

32.     A relationship of trust and confidence existed between the plaintiffs and the defendant, as shown by the facts that defendant was plaintiffs' oldest child, was an attorney who had represented them in the sale of the house in the Bronx and the purchase of their house in Virginia, had been named as attorney-in-fact by Solomon Leake in a power of attorney in 1978 and again in 1990, and as his health care agent in health care proxies, and had been an intermediary in disputes between the plaintiffs.

33.     In late 1998 and early 1999 defendant promised plaintiffs that she would invest the assets from their investment accounts in a "better performing account" and use the account for their benefit.

34. In reliance on the foregoing promise, plaintiffs transferred to defendant's control the assets in their Franklin Templeton and Nuveen Accounts.

35. In 2004, defendant promised plaintiff Solomon Leake that she would use his Bank of America Checking Account to pay his bills. In reliance on that promise, he made her a nominal joint owner of the account.

36. Defendant has been unjustly enriched by the payment to herself of $148,837.53 from the proceeds of the Franklin Templeton and Nuveen Accounts and $10,000 from the Bank of America Checking Account.

37. A constructive trust should be declared over the assets thus transferred to defendant and the proceeds of those assets in her hands..

Dated: New York, New York
June 4, 2008

                McGARRY & SIMON

                By:_____
                  William A. Simon (WS-4604)
                Attorneys for Plaintiffs
                317 Madison Avenue, Suite 1511
                New York, New York 10017
                Telephone No. (212) 867-0100
                Facsimile No. (212) 867-3243

TO: PHROSKA L. McALISTER, ESQ.
    Attorney for Defendant
    116 West 23rd Street, 5th Floor #197
    New York, New York 10011
    Telephone No. (212) 475-7085