UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NEW YORK 10007-1581
(212) 805-6325

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/7/09

CHAMBERS OF
COLLEEN McMAHON
UNITED STATES DISTRICT JUDGE

TO COUNSEL IN: Leake v. McAlister, 07cv 2947

FROM: Judge McMahon

RE: Solomon Leake's Capacity to Sue

DATE: July 7, 2009

---

Dear Mr. Simon and Ms. McAlister:

 I am extremely eager to reach the merits of this action, because the allegations in the complaint are of great concern to me. Regrettably, the family's decision not to seek appointment of a guardian for Solomon Leake ("Mr. Leake") three years ago, and instead to have Mr. Leake sign a power of attorney route after he had been diagnosed with and hospitalized for dementia, has complicated matters exceedingly. I am convinced that if the family had gone to court in Virginia and had a guardian appointed for Mr. Leake two years ago, this matter would have been fully adjudicated long ago. Now I want to make sure that it there is no more significant delay in addressing the real issue.

 To that end, I want to be sure that, this time, all issues relevant to who brings the action (and makes the decision concerning the Dead Man's Statute) are addressed. I have, therefore, tried to outline what I think those issues are. I do not mean to suggest that my list of questions is exhaustive and you should not hesitate to call other issues to my attention if you think them relevant.

 The ultimate question to be answered is: who will maintain this action on behalf of Solomon Leake, as required by Fed. R. Civ. P. 17(c), because Mr. Leake is no longer competent to sue in his own name? Mr. Simon takes the position that it is the holder of Mr. Leake's power of attorney, his daughter Sundy Leake.

1

*Does the January 14, 2006 Power of Attorney (the "POA") give Sundy Leake ("Ms. Leake") the ability to maintain this Lawsuit on her Father's Behalf?*

Before considering whether the POA allows Ms. Leake to prosecute this action on her father's behalf, I must determine whether it is valid.

Mr. Leake's Capacity to Execute the POA

The first issue to be resolved regarding the POA is the mental capacity of Solomon Leake at the time the durable power of attorney was executed – i.e. January 14, 2006. The testimony given by his physician concerning his mental state in late 2005 and on January 17, 2006 – three days post-execution – casts Mr. Leake's ability to assign power of attorney to anyone into doubt.

As I am sure you know, the mere existence of the power is insufficient to establish that the principal had the capacity to make it. Stackrow v. NY Prop. Ins Underwriters Ass'n., 115 A.D.2d 883, 885 (3d Dept 1985) (citing 2 NY Jur 2d, Agency, §13, at 477). I am not convinced by the testimony I have heard so far that Mr. Leake had the requisite mental capacity to execute a power of attorney in January 2006. I could be convinced if I heard appropriate testimony from a person who was able to explain more clearly than Ms. Sundy Leake did exactly what her father's mental condition was at the time the power of attorney was executed. Whether because of her lack of familiarity with testifying or because she deliberately chose to be opaque, Ms. Leake's answers to my questions were far from enlightening. The fact that Mr. Leake's doctor's notes show a diagnosis of dementia dating back to 1997 is extremely troubling to me, especially given Mr. Leake's age and his hospitalization only weeks prior to the giving of the power of attorney. Also troubling is the physician's testimony that Mr. Leake exhibited signs of Alzheimer's with delusions only three days after the power was executed.

I appreciate that Ms. Leake has been taking care of her parents and I completely understand why she would want some document authorizing her to do so. But a power of attorney executed by a person who lacks the mental capacity to give such a power is not worth the paper it is written on. Unless and until Mr. Leake's mental capacity at the time of the execution of the power is established to the court's satisfaction, I cannot and will not rely on it.

Ms. Leake's Ability to Accept a Power of Attorney

A related question is whether Ms. Leake has some sort of interest that would disqualify her from accepting a power of attorney from an individual who had dementia at the time it was executed. New York courts tend to be rather strict about this. For example, in In re Luby,180 Misc.2d 621, 623 (N.Y. Sup. Ct. 1999), William Luby was a private pay patient at a nursing home. When Luby's funds were depleted, and he needed to qualify for Medicaid so he could continue to pay his bills, he executed a limited power of attorney in favor of the nursing home operator, who then arranged for the eviction ot the tenant (Luby's son) and the sale of Luby's house.

2

Luby's son commenced a proceeding to have a guardian appointed for his father. Id. After a hearing during which the "court evaluator" testified that Mr. Luby had a dementia diagnosis that predated the execution of the power of attorney,[1] the court found that Mr. Luby was "incapacitated within the meaning of Mental Hygiene Law § 81.15, " and the court "vacated the power of attorney in favor of [the nursing home administrator] on the ground that..........Mr. Luby had executed the power of attorney subsequent to having been diagnosed with dementia by the nursing home's own physician." Id. at 623-24.

When the nursing home applied for an order directing Mr. Luby's appointed guardian to pay attorney's fees incurred by the nursing home administrator in evicting the son and selling the house, the court denied the motion, holding, "It is determined that a nursing home is not entitled to an award of legal fees in connection with its acceptance and exercise of a power of attorney received from a resident previously diagnosed by its own physicians with dementia where one of the objectives of the power of attorney was to protect the nursing home's interest as a creditor." Id.

The reasoning of this case suggests that courts should be wary of any unusual circumstances surrounding an appointment of an attorney-in- fact. In this case, Ms. Sundy's Leake's decision to abort her mother and sister's effort to have a court-appointed guardian named for her father; her creation of a power of attorney from a form found on a computer site rather than via consultation with a lawyer; the fact that the idea for her father to execute a power of attorney in her favor was hers and not her father's; and the execution of the power before a notary who had not previously known Mr. Leake, at a location removed from his place of residence (an assisted care facility, where presumably the staff were familiar with his physical and mental condition), all strike this court as "unusual" circumstances. I do not know whether Ms. Leake has any personal interest— either direct or inchoate—in her father's estate, and so in recovering assets from her sister. Nor do I know whether any such interest, if it exists, could be deemed "adverse" to the interest of Mr. Leake.

If the allegations of the complaint are true, then I appreciate that Ms. Leake and other members of the family were concerned that their father was being used by the defendant at a time when he was perhaps not the best person to manage his own affairs, and it would be far from unusual for a man to appoint a daughter to take over for him. However, the court must be comfortable both that Mr. Leake consciously decided to appoint Ms. Leake to manage his affairs decision, and that she was fully qualified to hold the power, free from any conflicting interest on her part. Cf. English v. Miller, 370 So.2d 968, 969 (Ala. 1979) (holding that the "possibility" that children, who were trust beneficiaries to two disputed savings accounts, might have an adverse interest to named parties, including their mother, necessitated an appointment of a guardian ad litem for the children).

---

[1] Testimony from a person who is qualified to evaluate someone's medical condition is common used New York State competency proceedings under Article 81 of the Mental Hygiene Law.

3

Assuming the POA is Valid, Does it Give Ms. Leake the Ability to Sue as a "Representative" under FRCP 17(c)(1)?

If I am convinced that the POA is valid, the next question is whether the POA makes Ms. Leake her father's representative under FRCP 17(c)(1) in this action.

There appears to be some conflicting authority on the question of whether, in a case proceeding in federal court in which a minor or incompetent has a representative appointed by authority other than the federal court acting under FRCP 17(c)(2), the capacity of that representative to sue is determined by the law of the state where the federal court is sitting (as required by subparagraph (b) of the Rule), or by federal law.

Courts in this Circuit appear to favor the former approach—that the law of the forum state controls the capacity of a representative to sue. See Debruyne v. Clay, No. 94-4704, 1995 WL 51134, at *2, (S.D.N.Y. Feb. 08, 1995) (analyzing N.Y. C.P.L.R. § 1201 to determine whether infants' father can act as act as a "representative: within the meaning of FRCP 17(c)) (citing Slade v. La. Power & Light Co., 418 F.2d 125 (5th Cir. 1968), cert. denied, 397 U.S. 1007 (1970); S. Ohio Sav. Bank & Trust Co. v. Guar. Trust Co. of N.Y., 27 F. Supp. 485 (S.D.N.Y. 1939)).

In Southern Ohio, 27 F. Supp. at 486, a 1939 case from this District, the plaintiff bank brought suit on behalf of incompetent William Nagle. In a prior proceeding in the Probate Court of Hamilton County, Ohio, Nagle had been adjudged incompetent and plaintiff had been appointed guardian of the his estate. Id. Defendant had been appointed ancillary committee of Nagle's property in New York by order of the New York Supreme Court. Plaintiff applied for an order in this District appointing it Nagle's guardian ad litem. The court denied plaintiff's request, holding that "the person recognized as committee by the law of New York may bring suit in this court in behalf of the incompetent. The committee recognized by the law of New York is the ancillary committee appointed in New York, not the general guardian appointed by the state of residence of the incompetent." Id. (citing N.Y. Civil Practice Act § 1377; Stock v. Mann, 255 N.Y. 100 (1930)).

The court went on to explain, "The power to appoint a guardian ad litem for an infant or incompetent under Rule 17(c) is confined to cases where the infant or incompetent is 'not otherwise represented' in the action. Here the incompetent is represented in the action by the ancillary committee appointed by the New York Supreme Court. So the application for appointment of a guardian ad litem for the incompetent must be denied."[2] Id.

---

[2] It appears that some of the reasoning in Southern Ohio does not completely dovetail with more recent case law (discussed in the next section) suggesting that even where a representative exists, a federal court retains the discretion to make an appointment under 17(c) in certain circumstances. However, the court in Southern Ohio dealt with the question of which representative could represent the incompetent in a federal court sitting in New York—the one appointed in Ohio or New York—not the question of whether the

4

Southern Ohio suggests that the state of the appointment may make a difference in the 17(c) calculus. The power of attorney at issue was executed in Virginia and is governed by Virginia law. That may be less relevant today than it perhaps would have been in 1939, given recent efforts to codify the law of durable powers of attorney nationwide and amendments to the Federal Rules of Civil Procedure. The power specifically states that it is to be recognized as valid in any state in which it is presented, but it does not appear that Virginia is one of the states that subscribes to the Uniform Durable Power of Attorney Law. Whether that makes a difference I do not know.

In any event, it appears the POA's validity will be judged by the law of New York. Powers of attorney in New York are governed by N.Y. Gen. Oblig. L. §§ 5-1501-1506. The parties should discuss whether the POA executed by Mr. Leake meets with the requirements under that title.

Finally, there is no question that a power of attorney vests in the agent duties of a fiduciary, and the obligation to act in the utmost good faith toward the principle, in accordance with the principles of morality, fidelity, loyalty, and fair dealing. See, e.g., Mantella v. Mantella, 268 A.D.2d 852 (3rd Dep't 200). Therefore, should the Court find that the POA is valid and that Ms. Leake is a valid holder of the power, it would stand to reason that as an attorney-in-fact Ms. Leake could be termed a "like fiduciary" under the Rule.

### *Should the Court Appoint Ms. Leake as Guardian ad Litem under FRCP 17(c)(2)?*

Under FRCP 17(c), a federal court has the power to appoint a guardian—or make another appropriate order—to protect the interests of an infant or incompetent. See, e.g., Seide v. Prevost, 536 F.Supp. 1121, 1132-33 (S.D.N.Y. 1982). If for some reason the power of attorney cannot be relied upon to make Ms. Leake a "like fiduciary" for her father, thereby allowing her to maintain this action on his behalf under FRCP (c)(1)(D), the next set of questions concerns whether she can or should be appointed to represent his interests in this lawsuit.

In this regard, the parties should be cognizant of the fact that even if Ms. Leake qualifies as a "like fiduciary," the recent case law holds that the Court has the discretion to elect to appoint a third-party if it appears in the best interests of the incompetent. The Second Circuit characterized the court's power under 17(c) thus,

> Rule 17(c) has always been viewed as permissive and not mandatory. It gives a federal court power to authorize someone other than a lawful representative to sue on behalf of an infant or incompetent person where

---

New York committee had any conflicts or other deficiencies making it unsuitable as a guardian.

5

that representative is unable, unwilling or refuses to act or has interests which conflict with those of the infant or incompetent.

Ad Hoc Comm. of Concerned Teachers on Behalf of Minor and Under-Age Students Attending Greenburgh Eleven Union Free School Dist. v. Greenburgh No. 11 Union Free School Dist. 873 F.2d 25, 29 (2d Cir.1989) (citing 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1570; 3A J. Moore & J. Lucas, Moore's Federal Practice, ¶ 17.26 (2d Ed.1987)).

The court in Ad Hoc. Comm. noted that "Federal courts in the Southern District of New York and other circuits have repeatedly affirmed a court's power to determine that the interests of a child or incompetent will be best represented by a 'next friend' or guardian ad litem and not by an authorized representative such as a parent or general guardian." Id. (citing Martha Von Bulow by her next friends Alexander Auersperg and Annie Laurie Auersperg et al. v. Claus Von Bulow, 634 F. Supp. 1284, 1292-93 (S.D.N.Y. 1986)). This is especially true when it appears that the interests of the representative are in conflict with those of the represented party. See Hoffert v. Gen. Motors Corp., 656 F.2d 161, 164 (5th Cir.1981), *cert. denied*, 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982); Dev. Disabilities Advocacy Ctr., Inc. v. Melton, 689 F.2d 281, 285 (1st Cir.1982); Adelman on behalf of Adelman v. Graves, 747 F.2d 986 (5th Cir.1984) (all cited approvingly by the Second Circuit in Ad Hoc Comm.).

It appears that Ms. Sundy Leake has been managing her father's affairs for some time now. I have no evidence that she has behaved improperly in exercising her responsibilities. Assuming she has no interest adverse to her father's interests (note that I said her father's interests, not her sister Phronska's interests), she is certainly entitled to be considered for appointment as his guardian ad litem.

If neither Ms. Leake nor another family member is appointed, then I would have to consider who should be appointed by this court to protect Mr. Leake's interests pursuant to Fed. R. Civ. P. 17(c). A subsidiary question is how that person will be compensated. The parties should address these issues as well.

### *A Note Regarding Diversity Jurisdiction*

As you know, federal jurisdiction in this matter is predicated on diversity of citizenship—the plaintiffs being citizens of Virginia and the defendant a citizen of New York. Ms. Leake is also a citizen of New York. If the POA is valid, and if it conferred on the holder of the power (Ms. Leake) the ability to bring the suit on her own behalf (rather than in a representative capacity as attorney-in-fact), then her citizenship would be relevant. However, I am convinced by a recent Second Circuit case that the existence of the power of attorney, without more, does not permit Ms. Leake to sue in her own name, see Advance Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 17-18 (2d Cir. 1997) ("The grant of a power of attorney, however is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring

6

suit in his own name"). Therefore, it seems the jurisdictional problem is indeed resolved by 28 U.S.C. §1332(c).

Please address these and any other issues you find to be relevant. I am not interested in polemics; I want you to cite to and discuss case law relevant to the decisions the court must make.

I look forward to receiving your briefs on Friday.

_____
U.S.D.J.

BY ECF TO ALL COUNSEL